**TRADEWINDS, INC., Plaintiff**

v.

**CITIBANK, N.A., NBG PROPERTIES, INC., and IBG PROPERTIES, INC., Defendants\***

Civil No. 80-7

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 11, 1983

---

\* Later decision reported at 19 V.I. 568.

WILLIAM HELLER, ESQ., St. Thomas, V.I., *for plaintiff*

JOSEPH BRUCE WM. ARELLANO, ESQ., Law Offices of ROGER CAMP-BELL, St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

This case is before the Court on nine separate motions. Two of the motions merit some discussion, the other will be disposed of summarily.

A) Motion to Join Parties Plaintiff

Defendants have moved, pursuant to Rule 25(c), to join four individuals who were formerly directors of the plaintiff corporation and who now serve as liquidating trustees of the corporation. The plaintiff, Tradewinds, Inc., filed for voluntary liquidation pursuant to 26 U.S.C. § 337 on October 8, 1980, and was liquidated on October 8, 1981. The record reveals that although Tradewinds has not been formerly dissolved in accordance with 13 V.I.C. § 283 it has divested itself of all its assets in part to comply with the stringent requirements of section 337 of the Internal Revenue Code.

██ Rule 25(c) is properly invoked whenever there is "any transfer of interest" during the pendency of an action. In many ways, the rule merely governs the manner in which the action is styled inasmuch as the "action may be continued by or against the original [transferor] party, and [any] judgment will be binding on his successor in interest even though he is not named."[1] 7A Wright and Miller, Federal Practice and Procedure, § 1958 (1972). In any event, an order of joinder is entirely within the discretion of the court which must initially determine whether or not "the transferee's presence would facilitate the conduct of the litigation." Id.

██ Plaintiff strenuously opposes the present motion on the ground that 13 V.I.C. § 285 permits a dissolved corporate entity to

---

[1] In addition, under the terms of 13 V.I.C. § 286(b) liquidating trustees may be suable in their "individual capacities for debts owing by [the dissolved] corporation, and shall be jointly and severally responsible for such debts, to the amount of the moneys and property of the corporation which shall come to their hands or possession as . . . trustees."

sue and be sued in its own name for up to three years from the date of its dissolution. However, the well established principle embodied in our corporations law that a dissolved or expired corporation may be permitted to litigate in its own name does not per force preclude the possibility that individual transferees of the corporation should *also* be named as parties. Indeed where a corporate plaintiff commences a lawsuit directed at protecting assets which are subsequently transferred during the pendency of the action, it is the transferees who in fact become the "undisclosed but controllingly active . . . parties to the action and to its defense." American Renaissance Lines, Inc. v. Saxis Steamship Co., 71 F.R.D. 703, 705 (E.D.N.Y. 1976) (motion to substitute transferees of dissolved corporation granted). The existence of the Delaware winding-up statute in American Renaissance, supra—a statute upon which our section 285 is itself modeled—was viewed by the court as actually "furnish[ing] a reason for *adding* . . . the transferees of the [corporate party's] interest." Id. at 705 (emphasis added). See also, United States v. F. D. Rich Company, 437 F.2d 549, 552 (9th Cir. 1970) (substitution of transferees of dissolved corporation proper where movant's counterclaim against corporation might be jeopardized).

█ Because of the uncertain consequences of Tradewinds' liquidation and de facto dissolution, we conclude that the addition of four transferees would likely "facilitate" the resolution of this lawsuit without measurable prejudice to the corporate plaintiff. In addition the question of whether potential liability (or set-off rights) must be limited to the value of corporate assets actually transferred (a question not addressed at this time) will be better resolved with the liquidating trustees present as named parties. Exercising the discretion afforded by Rule 25(c), the motion of defendants to join additional parties will be granted.

B) Motion For Summary Judgment on Count II

For the second time in the course of this litigation, defendants challenge the legal sufficiency of the second count of the amended complaint. See, Memorandum and Order of December 30, 1980 (motion to dismiss denied). They seek summary judgment on the entire count or in the alternative, to have the punitive damage prayer stricken.

As a second count, plaintiff states a cause of action essentially for breach of a contract entered into between plaintiff Tradewinds, Inc., and defendants I.B.G. Properties, Inc., and N.B.G. Properties, Inc. The deposition testimony discloses that the gravamen of count two

134

with respect to defendants I.B.G. and N.B.G. is an alleged breach of paragraph 2(a) of the 1977 contract under which plaintiff was to act as sole sales agent for various parcels of property, the development of which was the subject of the contract. Insofar as defendant Citibank is concerned, the second count appears to be premised upon a theory of misrepresentation or a theory of tortious interference with contract rights.

 While we remain unpersuaded that the second count of the complaint should be dismissed for failing to set forth any basis for recovery, we agree that the claim for punitive damages—at least against defendants N.B.G. and I.B.G.—is improper. The rule of the Restatement (Second) of Contracts, § 335 (1981) is that punitive damages are not recoverable for a breach of contract action. The pleading as against N.B.G. and I.B.G. outlined above sounds entirely in contract. It fails to set forth any theory or any facts which could reasonably support an action in tort.[2] Although Section 908 of the Restatement (Second) of Torts (1977) emphasizes that a plaintiff who properly asserts a claim which rests on alternative tort and contract theories is not precluded from an award of punitive damages, that portion of the complaint challenged herein does not set forth such alternative grounds for relief. In the absence of any evidence that the purported breach of I.B.G. and N.B.G. also amounted to a tort within the definition of the Restatements, the prayer for punitive damages against those two defendants should be stricken.

 With respect to defendant Citibank, the question of whether a claim for punitive damages is appropriate is not without some troubling aspects. However, applying the Restatement rule to this phase of the complaint, it cannot be said as a matter of law that plaintiff has failed to state any facts which could support a tort theory of recovery. While the complaint itself does not disclose precisely the cause of action which is asserted against Citibank in count two, the deposition testimony (upon which defendants place much emphasis) reveals that a *prima facie* tortious interference claim could conceivably be established. Where there is any possibility that a cause of action might sound in whole or in part in tort, the better course is

---

[2] Any allegation of the torts of fraud or misrepresentation on the part of I.B.G. and N.B.G. cannot survive in light of the command of Rule 9(b) that allegations of fraud must be pleaded with specificity. Nor does the single allegation of "bad faith" or "recklessness" support a punitive damage claim in the absence of specific conduct which would require the deterrent sanctions embodied in a punitive damage award. Restatement (Second) of Torts, § 908 comment b.

"to delay ruling on whether the actions complained of are of such a . . . character as to justify submitting the issue of punitive damages to the jury until after the plaintiff's case has been heard." Shackelford v. Puerto Rico International Airlines, Inc., 16 V.I. 342, 346 (D.V.I. 1979).

For all the foregoing reasons, the motion of defendants for summary judgment on count two of the amended complaint will be denied. However, the prayer for punitive damages as against I.B.G. Properties, Inc., and N.B.G. Properties, Inc., will be stricken.

As we conclude this Memorandum, the Court feels compelled to comment briefly about the manner in which this case has proceeded. The number of lengthy[3] and in many instances almost purely specious motions, affidavits and discovery requests filed by counsel has, in the judgment of the Court, made a farce of the orderly pre-trial motion and discovery practice contemplated by the Federal Rules. It should be remembered that not every defect in an opponent's pleading provides a proper basis for attack by way of motion. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome . . . ." Conley v. Gibson, 355 U.S. 41, 48 (1957). So also the long standing custom in this jurisdiction of civility and accommodation among counsel is antithetical to the idea that motion practice and discovery are a syntactical jousting contest designed to trick an opponent into damning admissions or oversights.

It is well known to all the members of the bar that this Court operates under a stringent mandate to minimize the congestion of its criminal and civil case calendars. As such, we can only take a dim view of the practice of serving interminable filings solely for the purpose of delay, obstruction or harassment. The above captioned action was commenced three years ago this month. At this late date, counsel for all parties surely owe a responsibility to their clients, if not to the Court, to resolve minor differences over discovery and filing deadlines through stipulation rather than through time consuming (and costly) motions. See, Memorandum to Members of the Virgin Islands Bar, D.V.I., July 15, 1981. Counsel are hereby put on notice that the Court is prepared to impose appropriate sanctions whenever a filing is submitted merely as a dilatory tactic.

---

[3] Judge Aldisert has recently noted that "advocacy is measured by effectiveness, not loquaciousness." "The Appellate Bar: Professional Competence and Professional Responsibility," Capital University Law Review 445, 458 (1982). Indeed loquacity is the very reason a legal memorandum may fail to persuade a court inasmuch as meritorious arguments are readily lost among groundless arguments.

## ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that the motion of defendants to join additional parties be, and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the prayer for punitive damages against defendants N.B.G. Properties, Inc., and I.B.G. Properties, Inc., contained in the second count of the amended complaint be, and the same is hereby, STRICKEN;

IT IS FURTHER ORDERED that the motions of defendants for entry of default be, and the same are hereby, DENIED;

IT IS FURTHER ORDERED that plaintiff provide counsel for defendants with two copies of each motion, memorandum, affidavit, request for admissions and interrogatory request;

IT IS FURTHER ORDERED that the motion of defendants for leave to present oral arguments be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that the motion of plaintiff for reconsideration of the Order of this Court entered on October 4, 1982, be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that plaintiff file complete and nonevasive responses to defendants' first set of interrogatories and demand for production filed on October 26, 1982 on or before January 14, 1983; and

IT IS FURTHER ORDERED that plaintiff file complete and nonevasive answers to defendants' second set of interrogatories and demand for production of documents filed on November 5, 1982, on or before January 28, 1983.