**JO-ANN'S LAUNDER CENTER, INC. et al., Plaintiffs**

**v.**

**THE CHASE MANHATTAN BANK, N.A., Defendant**

Civil No. 1989-106

District Court of the Virgin Islands

Div. of St. Croix

January 14, 1994

MOORE, *Chief Judge*

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's summary judgment motion pursuant to Fed. R. Civ. P. 56. For the reasons expressed herein, the motion will be granted in part and denied in part.

## I. BACKGROUND

In June 1984, plaintiffs Rafael and Paulina Estrada (sometimes "the Estradas"), who were operating Jo-Ann's Laundromat and Drycleaning (sometimes "Jo-Ann's"), obtained a $250,000 loan from Chase Manhattan Bank (sometimes "Chase"). The loan was personally guaranteed by the Estradas, and secured by mortgages on their property as well as a UCC lien on all of Jo-Ann's assets. Approximately 83% of the loan was also guaranteed by the Small Business Administration ("SBA"). According to its terms, the loan was payable in monthly installments over seven years. The Estradas were required to make monthly principal payments of $2,976.19, plus interest to be adjusted quarterly.

It is undisputed that the Estradas began repaying the loan as of August 1, 1984, and that they missed a payment in November 1985. About this time, they apparently approached Wingrove Lynton, a Chase loan officer, to request a line of credit. No line of credit was ever extended. In June 1986, the Estradas requested a six-month moratorium on principal payments. They then made six, successive interest-only payments until December 1986 when they resumed making full payments.

It is also undisputed that Chase contacted the SBA in October 1986 to call the guaranty on the loan. On April 28, 1987 Chase received $173,647 from the SBA, representing the SBA's guaranteed portion of the loan. After the SBA assumed administration of the loan, it contacted the Estradas regarding $73,188 in past due installments. The Estradas unsuccessfully attampted to obtain credit elsewhere in order to meet the working capital needs of their business. By 1991, Jo-Ann's was out of business.

## II. DISCUSSION

■■ A court may enter summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue exists. Jersey Central Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985), cert. denied, 475 U.S. 1013 (1986). The non-moving party receives the benefit of all reasonable doubts and inferences drawn from the underlying facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986). If the non-moving party bears the burden of proof at trial on a dispositive issue, Rule 56(e) requires him to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In support of their motion, Chase asserts that the complaint should be dismissed because plaintiffs cannot prove that Chase

caused them financial harm. (Def.'s Br. at 8.) With respect to individual claims, Chase contends that plaintiffs' breach of contract claims (Counts I and II) should be dismissed because the Estradas breached the loan agreement themselves by failing to make an installment payment in November 1985 and by making only partial payments in other months. Chase asserts that it was entitled to call the guaranty because the Estradas were in default on the loan as of October 1986. Chase also asserts that plaintiffs' contract and tort claims for breach of the covenant of good faith and fair dealing (Counts III and IV) should be dismissed because there is no legal duty of good faith in a lender/borrower relationship. As for Counts V through X,[1] Chase contends that any viable theories of recovery lie in contract, not tort.

A. *Contract Claims*

■   As in other jurisdictions, the elements of a breach of contract claim under Virgin Islands law necessarily include a showing that a plaintiff's damages were a proximate result of the breach. See, e.g., Brown v. Virgin Islands Tele. Corp., 9 V.I. 108, 112 (Mun. Ct. 1972). In the matter sub judice, plaintiffs' complaint essentially seeks to hold Chase liable for calling the SBA guaranty and causing Jo-Ann's to go out of business. In opposition to summary judgment, they have provided expert testimony showing that Chase's actions foreclosed the Estradas from obtaining other credit or loans and made Jo-Ann's "unbankable". (See Reed Aff. ¶ 14.) Plaintiffs also offer testimony revealing that their business would not have collapsed but for the fact that defendant called the guaranty. (See Chasen Aff. ¶¶ 17–18.) By contrast, Chase's affidavits seek to establish that Jo-Ann's collapsed because of its perilous financial condition, not because the loan guaranty was invoked. (See Drake Aff., Exs. A–L.)

■   It is undisputed that the SBA/Chase loan guaranty agreement provides that the bank can call the guaranty in the event that "a default [of any installment of principal or interest] . . . by a borrower continues uncured for more than 60 days . . ." (Drake Aff.,

---

[1] Defendant's moving papers only specifically address Counts I–V, VIII and X, however, Chase's argument that Count V should be dismissed because Chase owed no duty to plaintiffs presumably extends to the undiscussed counts of the complaint.

Ex. O.) There is clearly a factual dispute whether plaintiffs were in default because of the missed November 1985 payment or the interest-only payments made between June and December 1986. Plaintiffs contend that the November 1985 payment was cured as of the December 1985 payment. Chase claims it was not cured because plaintiffs remained a month behind in their payments at all times.[2] The Estradas also claim that Chase agreed to a six-month principal moratorium. Defendant claims that there was no such agreement. These disputes cannot be resolved on the present record. Hence, summary judgment is not appropriate with respect to plaintiff's breach of contract claims.

■ Furthermore, there is clearly a genuine issue of fact whether the alleged breach was a proximate cause of plaintiffs' damages. Chase contends that judgment should be entered in its favor because plaintiffs rely on "surmise and speculation" about Jo-Ann's credit worthiness. (Def.'s Reply Br. at 3.) However, Rule 56 affidavits only require that the affiant be "competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Leonard Chasen is a CPA with extensive knowledge and experience within the Virgin Islands financial community. (Chasen Aff. ¶¶ 1–3.) Robin Reed is a member of the Virgin Islands Banking Commission and a former Chase employee. (Reed Aff. ¶ 2.) The testimony of these affiants raises a question of credibility which must be resolved at trial. See 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2738 (1983).

As for the other contract claim in Count III, Chase relies upon law from other jurisdictions in support of its argument that there is no implied contractual duty of good faith in a lender/borrower relationship. See Temp-Way Corp. v. Continental Bank, 139 B.R. 299, 319–20 (E.D. Pa. 1992), aff'd, 981 F.2d 1248 (3d Cir. 1992) (Pennsylvania law); Rosas v. United States Small Business Admin., 964 F.2d 351, 357–58 (5th Cir. 1992) (Texas law). In response, plaintiffs cite numerous cases in which other jurisdictions have imposed a

---

[2] At oral argument, defendant argued that under SBA methodology, payments should be applied toward interest first and then principal. The Estradas made a payment of $5,400 in December 1985. (Pls.' Ex. 61.) Chase contends that this payment did not cure the default because it represented a principal payment of only $832, after $4,568 was first applied against interest. However, it is clear to this Court that the factfinder must decide whether this is the correct methodology and whether and when an event of default occurred.

covenant of good faith on banks in a lender/borrower context. See, e.g., Reid v. Key Bank of Southern Maine, 821 F.2d 9, 13 (1st Cir. 1987) (Maine law).

■ Courts of this jurisdiction have recognized that an implied covenant exists in other contractual contexts. See Robinson v. Hess Oil Virgin Islands Corp., 19 V.I. 106, 112–13 (D.V.I. 1982) (employment at-will contract). Moreover, in the absence of contravening "local law" contained in either Virgin Islands statutes or case law, we are instructed to rely on the rules of common law as expressed in the restatements. V.I. Code Ann., tit. 1 § 4 (Equity 1967). Thus, in accordance with Restatment (Second) of Contracts § 205 (1981), we will permit a cause of action for breach of the implied duty of good faith and fair dealing in a loan contract between a lender and a borrower.[3] Defendant's motion for judgment in its favor on Count III must be denied because plaintiffs have an actionable claim and there are disputed issues of fact regarding Chase's administration of plaintiffs' loan.

## B. *Tort Claims*

■ However, as the Temp-Way court stated, "where a duty of good faith arises it arises under the law of contracts, and there is no need to create a separate tort for breach of a duty of good faith." 139 B.R. at 320 (relying on Creeger Brick and Bldg. Supply, Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 155, 385 Pa. Super. 30 (1989)).[4] In the absence of specific Virgin Islands law granting a borrower a tort claim against a lender for breach of the implied covenant, this Court adopts the reasoning applied in Temp-Way. Plaintiffs' Count IV does not assert a viable cause of action and must be dismissed. Any recovery for breach of the implied cove-

---

[3] Section 205 reads as follows:

> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

[4] Creeger involved a case similar to this one. The plaintiffs obtained a 90% SBA-guaranteed loan through the defendant, Mid-State Bank and Trust Co. for their brick manufacturing business. Plaintiffs then sought additional financing in the form of a line of credit, but the bank refused to extend further financing. Eventually, the bank called the SBA guaranty and the plaintiffs' business collapsed. The plaintiffs then initiated an action against the bank for failing to deal in good faith. The Creeger court held that under Pennsylvania law the duty of good faith arises out of the contractual relationship between a lender and a borrower, not any separate tortious duty owed to the borrower.

nant of good faith and fair dealing in this case lies in contract, not tort.

As for plaintiffs' other tort claims (Counts V–X), defendant contends that these claims are not viable as a matter of law because Chase did not owe plaintiffs any duty independent of the loan contract. Defendant relies upon several cases from other jurisdictions to support its proposition that a plaintiff cannot recover in tort where there is no duty owed to the plaintiff other than the duty arising out of the contract itself. See, e.g., Tristar Cosmetics, Ltd. v. Westinghouse Broadcasting Co., Inc., 1992 U.S. Dist. Lexis 3248, at *8 (E.D. Pa. Mar. 17, 1992); Int'l Minerals & Mining Corp. v. Citicorp N.A., Inc., 736 F. Supp. 587, 597 (D.N.J. 1990). Plaintiffs, in turn, rely upon a Maryland state court decision to support its argument that the instant case meets the test for imposing tort duties on contracting parties. Jacques v. First Nat'l Bank, 307 Md. 527, 515 A.2d 756, 759–60 (Md. 1986).[5]

In Jacques, the Maryland Court of Appeals rules that a lending bank had a duty of reasonable care in processing the loan application of a potential borrower. The plaintiffs in Jacques executed a residential sales contract as purchasers and then applied to the bank for a mortgage loan. The Jacques subsequently sued the bank for negligent processing of their loan application. In determining whether a tort duty existed, the court emphasized the existence of a contractual relationship between the parties. Id. at 760. The court found that the bank had a duty of reasonable care in processing the Jacques' loan because a contract existed between the parties according to which the bank promised to lock in a particular interest rate and process the loan application in exchange for the loan application fee paid by the Jacques. Id. at 762.[6]

However, Jacques is readily distinguishable from this case. In fact, that decision rested largely upon the unique circumstances surrounding the residential purchase contract and the financing arrangement between the Jacques and the bank. See Hill v. Equitable

---

[5] Plaintiffs characterize this test as having two prongs: (1) a showing of "intimate nexus" between the contracting parties; and (2) a showing of "superior skills" by one party which holds itself out as a professional possessing certain skills upon which the other party can rely. (Pls.' Br. at 48.)

[6] Jacques has been cited approvingly by at least one court within this circuit. See Hill v. Equitable Bank, N.A., 655 F. Supp. 631, 651 (D. Del. 1987), aff'd, 851 F.2d 691 (3d Cir. 1988).

Trust Co., 851 F.2d 691, 699 (3d Cir. 1988), cert. denied, 488 U.S. 1008 (1989). The purchase contract required the Jacques to make a $30,000 down payment and finance the $112,000 balance. It also contained an unusual provision which required them to proceed to settlement as long as the financing bank agreed to lend them any amount, and they would have to make up the difference by increasing the down payment.[7] In the court's opinion,

> when the Bank agreed to process the application for a loan for which the applicants qualified, it undertook a significant responsibility. In accepting the loan application for processing, the Bank had knowledge that the Jacques would be legally obligated to either proceed to settlement with the loan determined by the Bank or forfeit their deposit of $10,000 and lose any benefit of their bargain.

515 A.2d at 763.

In its analysis, the Maryland court first considered whether a tort duty exists when there is a contractual relationship between parties. It noted that "[t]he mere negligent breach of contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." Id. at 759 (quoting Heckrotte v. Riddle, 224 Md. 591, 595, 168 A.2d 879 (1961)). However, the court opined that the Jacques could pursue either a contract or tort action because (1) a contractual relationship existed between the parties, and (2) the bank was aware of the extraordinary financing provisions in the Jacques' purchase contract and thus undertook an independent duty to exercise reasonable care in processing the loan. Under the circumstances, the Jacques were permitted to sue in tort rather than contract.

■ There is no such independent duty or obligation in tort flowing from Chase to the Estradas in the circumstances of this case. The Estradas' loss allegedly arises out of Chase's administration of the loan. It is not alleged, and there is no factual support to

---

[7] The bank initially informed the Jacques that they qualified only for a loan of $71,000. It then contacted the Jacques and informed them that it had erred in its original loan calculation, and that in fact they qualified for a loan of $41,400. 515 A.2d at 757. The Jacques then attempted to obtain financing elsewhere but interest rates had risen dramatically. As a result, the Jacques proceeded to closing with the bank's $41,400 loan and by securing personal loans from relatives and a short term personal loan of $50,000 from the bank.

establish, that Chase undertook any special obligations other than those arising out of an ordinary business loan guaranteed by the SBA. At most, Chase had a contractual duty of reasonable care in handling the Estradas' loan so as not to commit a breach of contract. In the absence of any independent duty owed by Chase, plaintiffs' tort remedies may not be maintained in addition to those established under the contract itself.[8] Compare Int'l Minerals & Mining Corp., 736 F. Supp. at 597 (no independent duty of care owed by borrower) with Hill v. Equitable Bank, N.A., 655 F. Supp. 631, 650 (D. Del. 1987) (bank owed duty against negligent misrepresentation); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 92, at 655–57 (5th ed. 1984).

■ In addition, several of plaintiffs' tort claims are clearly without merit. Plaintiffs' claims for fraud (Count VII) and intentional infliction of emotional distress (Count IX) are deficient. They have stated no cognizable facts in support of these claims which would satisfy the prima facie elements for either of these torts. Moreover, the federal pleading rules require that claims of fraud be stated with particularity. Fed. R. Civ. P. 9(b). Plaintiffs have not plead fraud or "constructive fraud" with any specificity.

■ In support of their claim for breach of fiduciary duty (Count VIII), plaintiffs rely on expert testimony stating that the Estradas had a "very close relationship" with Chase. They contend that Chase's loan officer, Wingrove Lynton, did work on behalf of the Estradas which was beyond his normal activities, thereby creating a fiduciary relationship. Even if true, however, these facts to not subvert the presumption that Chase and the Estradas operated at arms-length and the parties each acted in their own interest. A fiduciary relationship may arise if the lender gains substantial control over the borrower's business affairs, such as participating in the lender's day-to-day management. See Temp-Way, 139 B.R. at 318. There is no evidence of a fiduciary relationship here.

■ Finally, defendant asserts that this action is solely for breach of contract, and hence, punitive damages are not recover-

---

[8] Moreover, Jacques makes it clear that even where an independent duty exists, an action exists in tort or contract, but not both. 515 A.2d at 759. Plaintiffs' complaint appears to leave no doubt that this is an action for breach of contract. In fact, each tort claim realleges the exact same averments made in support of their contract claims.

able. See Tradewinds, Inc. v. Citibank, N.A., 20 V.I. 131, 135–36 (D.V.I. 1983) (citing Restatement (Second) of Contracts § 335 (1981)). Because we have determined that each of plaintiffs' tort claims must be dismissed, the claim for punitive damages is improper. Id. at 135.

## III. CONCLUSION

For all these reasons,

IT IS THEREFORE on this 14th day of January 1994,

ORDERED that defendant's summary judgment motion is granted in part and denied in part; specifically, the motion is granted with respect to Counts IV through X of the complaint.