**BAREFOOT ARCHITECT, INC., Plaintiff**

**v.**

**SARAH L. BUNGE, THOMAS F. FRIEDBERG, TRACY ROBERTS,
and SPRINGLINE ARCHITECT, LLC, Defendants**

Civil No. 2004-99

District Court of the Virgin Islands

Division of St. Thomas and St. John

June 22, 2007

931

STEVEN HOGROIAN, ESQ., St. John, U.S.V.I, *For the Plaintiff.*

HENRY C. SMOCK, ESQ., St. Thomas, U.S.V.I., *For the Defendants.*

GOMEZ, *Chief Judge*

## MEMORANDUM OPINION

(June 22, 2007)

Before the Court is the motion of the plaintiff, Barefoot Architect, Inc. ("Barefoot") to dismiss the counterclaim brought by the defendants, Sarah L. Bunge ("Bunge"), Thomas F. Friedberg ("Friedberg"), Tracy Roberts ("Roberts"), and Springline Architect, LLC ("Springline") (collectively, the "defendants").

## I. FACTS

On August 31, 2000, Barefoot and Friedberg entered into a written contract in which Barefoot agreed to provide "services for all necessary architectural plans for the construction of a residence at 168 Chocolate Hole, St. John, U.S. Virgin Islands" (the "Residence"). (Third Am. Answer at ¶ 9.) In exchange for those services, Friedberg agreed to pay Barefoot $123,495. The permitting and construction did not proceed as planned. Additionally, Friedberg failed to make timely payments to Barefoot.

Thereafter, Barefoot filed this action. The defendants filed an answer on October 18, 2004, which did not include any counterclaims. On March 9, 2004 [sic], after receiving leave from the Court, the defendants filed a Third Amended Answer and Counterclaim. The counterclaim alleges breach of contract, fraud and misrepresentation, breach of

fiduciary duty, federal unfair competition and unauthorized use of trade name, and tortious interference with contractual relations.

Barefoot moves to dismiss four of the defendants' causes of action.[1]

## II. DISCUSSION

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, all material allegations in the complaint are taken as true, and the Court must construe all facts in a light most favorable to the non-moving party. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). Additionally, all reasonable inferences are drawn in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 223 (3d Cir. 2004). The complaint should not be dismissed unless the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Wheeler v. Hampton Twp.*, 399 F.3d 238, 242 (3d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III. ANALYSIS

### A. Fraud and Misrepresentation

Count Two of the defendants' counterclaim alleges a claim for fraud and misrepresentation against Barefoot. Barefoot argues that Count Two should be dismissed because it fails to state a claim.

An action in tort accompanying a breach of contract claim requires allegations setting forth "a duty or obligation imposed by law independent of that arising out of the contract itself." *Jo-Ann's Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*, 854 F. Supp. 387, 392 (D.V.I. 1994); *see also International Minerals and Min. Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990) ("[A]n independent tort action is not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself."). To maintain an independent tort claim, a party must allege facts showing that the tortious conduct is the "gist of the action" and that the contract is collateral. *See Bohler-Uddeholm America Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103 (3d Cir. 2001). "[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by

---

[1] Barefoot's motion does not seek dismissal of the breach of contract counterclaim.

mutual consensus." *Bohler-Uddeholm America Inc.*, 247 F.3d at 103 (internal citation and quotations omitted).

◼ Whether the "gist of the action" lies in tort or contract will therefore depend on the source of the duty allegedly violated. "If the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based." *Charleswell*, 308 F. Supp 2d at 567 (internal citation and quotations omitted).

The defendants' second counterclaim states that Barefoot induced Friedberg to enter into a contract and to pay Barefoot an amount exceeding the contract price,[2] by agreeing to provide "all necessary architectural plans and secure the necessary governmental permits." (Third Am. Answer at ¶¶ 21, 23.) The defendants further allege that, "[d]espite having received an amount in excess of the stipulated sum contract price ... Barefoot failed and refused to perform the work required to prepare all necessary architectural plans and secure the necessary governmental permits." *Id.* at ¶ 24.

◼ Based on the allegations in Count Two of the counterclaim, the only duties that Barefoot could have breached involve failure to perform architectural work and failure to obtain permits for such work. Whether or not the duties breached by Barefoot were within the scope of the written contract, those alleged obligations were imposed by mutual consensus rather than by social policy. Count Two does not allege that Barefoot owed the defendants any special obligations other than those arising out of an ordinary contract for services. Absent any allegations showing an independent duty owed by Barefoot, the defendants' tort claims may not be maintained in addition to their breach of contract claims. *See, e.g., Jo-Ann's Launder Ctr., Inc.*, 854 F. Supp. at 391 (holding that, absent any duty owed by a lender bank to borrowers independent of a contractual duty of reasonable care in handling their loan, the borrowers' tort remedies could not be maintained in addition to those established under contract itself); *Feldman v. U.S. Sprint*

---

[2] It is unknown how much the defendants paid Barefoot beyond the contract price of $123,495. The counterclaim simply alleges that the defendants paid Barefoot "a combined sum in excess of the stipulated sum contract price." (Third Am. Answer at ¶ 23.)

934

*Communications Co.*, 714 F. Supp. 727, 733 (D.N.J. 1988) (granting summary judgment for the defendant on a gross negligence claim in an action for failure to supply sales commissions pursuant to a contractual arrangement since the defendant owed the plaintiff no duty other than that arising out of contract).

Accordingly, the defendants have failed to state a cause of action for fraud and misrepresentation.

## B. Limitations Period of Title 5, Section 31(5), of the Virgin Islands Code

In Count Three of their counterclaim, the defendants allege that Barefoot breached a fiduciary duty it owed to them. Barefoot argues Count Three is barred by the two year limitations period imposed by title 5, section 31(5)(A) of the Virgin Islands Code ("Section 31(5)").

The Federal Rules of Civil Procedure technically do not allow a limitations defense to be raised in a motion to dismiss. *See* FED. R. CIV. P. 12(b). However, in the Third Circuit, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994); *see also Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) ("[T]he law of this Circuit ... permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."). "If the [limitations] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson*, 313 F.3d at 135 (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Here, Barefoot correctly points out that in the Virgin Islands, actions for breach of fiduciary duty must be brought within two years from when the cause of action accrued. *See* 5 V.I.C. § 31(5) (1977); *see also Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 562 ("Under Virgin Islands law, plaintiffs' tort law claims for ... breach of fiduciary duty are governed by a two-year statute of limitations."). However, none of the facts alleged in the counterclaim indicate when the purported breaches of fiduciary duty occurred, or when the defendants discovered or reasonably should have discovered such breaches.

Consequently, it is not apparent from the face of the counterclaim that the breach of fiduciary duty claim is barred by the two year limitations period imposed by Section 31(5).

Accordingly, the Court will deny Barefoot's motion to dismiss the defendants' breach of fiduciary duty claim.

## C. Federal Unfair Competition and Unauthorized Use of a Trade Name.

In Count Four of their counterclaim, the defendants allege that Barefoot engaged in unfair competition and unauthorized use of a trade name, in violation of title 15, sections 1111, *et seq.* of the United States Code (hereinafter referred to as the "Lanham Act"). Barefoot argues that the defendants have not alleged that the architectural works or trade name in question was not used in commerce, as required under the Lanham Act.

The Lanham Act creates two bases for liability: "(1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ('false association'), and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')."[3] *Serbin v. Ziebart Intern. Corp., Inc.,* 11 F.3d 1163, 1173 (3d Cir. 1993). The protection provided by the Lanham Act extends to unregistered, as well as registered trademarks. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992) (holding that the Lanham Act

---

[3] The Lanham Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (1999).

protects both registered and unregistered trademarks). Protectable "trademarks" include names, symbols, and even product designs.[4] *See* 15 U.S.C. § 1127 (defining the term "trademark"); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000) (holding that Lanham Act protection extends to product designs, as well as trademarks).

■ To state a claim for unfair competition or false association of a registered or unregistered trade name, a party must allege that: (1) it owns a valid, protectable mark; (2) the alleged infringer used the mark; (3) in commerce; (4) in connection with any goods or services; (5) without the complaining party's consent; and (6) the alleged infringer's use of that mark "is likely to cause confusion ... as to the affiliation, connection, or association of [the infringer] with [the trademark owner], or as to the origin, sponsorship, or approval of [the infringer's] goods, services, or commercial activities by [the trademark owner]." 15 U.S.C. § 1125(a)(1)(A); *see also 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) (listing the elements of a Lanham Act claim based on false association).

■ To state a claim under the Lanham Act based on false advertising, a party must allege:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods [or services] traveled in interstate commerce; and 5) that there is a likelihood of injury to the [complaining party] in terms of declining sales, loss of good will, etc.

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992) (quoting *United States Healthcare v. Blue Cross of Gr. Philadelphia*, 898 F.2d 914, 922-23 (3d Cir. 1990)).

Under the Lanham Act, "use in commerce" means

---

[4] The term "trademark" is defined by the statute as "any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a producer's] goods ... from those manufactured or sold by others and to indicate the source of the goods ... ." 15 U.S.C. § 1127.

the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. ...

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services *and* the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127 (emphasis added).[5] The mere advertising or promotional use of a protectable mark is insufficient to constitute "use in commerce" under the Lanham Act, unless the advertising or promotion is accompanied by any actual rendering of services in the United States or in commerce which may be lawfully regulated by Congress. *Id.; see also Buti v. Perosa, S.R.L.,* 139 F.3d 98, 103-05 (2d Cir. 1998), *cert. denied,* 525 U.S. 826 (1998) (noting that the services advertised, not the advertising itself, must have been "rendered in commerce" to satisfy the "use in commerce" requirement of the Lanham Act); *Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc.,* 434 F. Supp. 697, 701 (E.D. Mich. 1976), *affirmed,* 559 F.2d 1219 (6th Cir. 1977) ("Mere advertising use is insufficient to support a valid trademark.").

Here, the defendants have alleged that Barefoot has "taken credit in both writing, orally, and on the internet that the home at 168 Chocolate Hole [ ] designed by Roberts and Springline, [i]s their design so as to likely cause confusion as to the origin or sponsorship of the architectural work." (Third Am. Answer at ¶ 40.) The defendants have also alleged that Barefoot "used the registered trade name, 'Kinja,' in their advertising" and that "[a]t no time have Bunge or Friedberg given

---

[5] The term "commerce" is defined as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127.

permission in any form to Barefoot[] to use the registered trade name 'Kinja.'" (*Id.* at ¶¶ 41-42.) Assuming that Barefoot's purported unauthorized actions affected interstate commerce, the defendants have not alleged that Barefoot placed the architectural plans or trade name on any goods, containers, displays, or documents associated therewith. Nor have the defendants alleged that Barefoot actually rendered any services in connection with the architectural designs or trade name "Kinja." Therefore, the defendants have failed to allege Barefoot's "use in commerce" of the designs or trade name, as required by the Lanham Act. *See, e.g., Buti*, 139 F.3d 98, 103-07 (holding that the defendant's advertising and promotional activities in the United States were insufficient to establish the defendant's "use in commerce" of the plaintiff's "Fashion Cafe" trade name, since the defendant rendered no services under the "Fashion Cafe" name in the United States).

Accordingly, the defendants have failed to state a claim for federal unfair competition and unauthorized use of a trade name.

## D. Tortious Interference with Contractual Relations

Count Five of the counterclaim alleges that Barefoot committed tortious interference with the defendants' contractual relations. Barefoot argues the defendants have failed to state a claim for tortious interference with contractual relations.

Section 766 of the RESTATEMENT (SECOND) OF TORTS, provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

RESTATEMENT (SECOND) OF TORTS § 766 (1979).

To state a claim for tortious interference with contractual relations, a party must allege the following six elements: (1) a contract existed between the complaining party and a third party; (2) the alleged tortfeasor knew of the contract's existence; (3) the defendant intentionally and improperly interfered with the contract; (4) the interference was the proximate cause of one party failing to perform; (5) the defendant intended to harm the complaining party by interfering with the

contract; and (6) the non-performance resulted in harm to the complaining party. *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 452 (D.V.I. 1997).

Here the defendants have alleged that Barefoot:

> engaged in a course of action and communications to the Commissioner of the Virgin Islands Department of Planning and Natural Resources and to that department's planning division, beginning in 2002, and to other, that was designed and calculated to delay and interfere with the permitting process for the construction of the Friedberg-Bunge home at 168 Chocolate Hole ... .

(Third Am. Answer at ¶ 46.) The defendants allege that two contracts existed: one between Friedman and Barefoot, and one between Springline and Friedman. The defendants have also alleged that Barefoot intentionally interfered with their contractual relations with others, and that Barefoot's actions did in fact cause such interference. However, the defendants have not alleged that Barefoot's interference was the proximate cause of the failure to perform of one of the parties to an existing contract. In fact, the defendants have not alleged that either Friedberg or Springline failed to perform in any way. Therefore, the defendants have failed to state a claim for tortious interference with contractual relations. *See, e.g., Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 576 F. Supp. 922, 930 (D. Del. 1983) (holding that the defendant was not liable for tortious interference with a contract by inducing a shareholder to sell its shares to the defendant rather than to another tender offeror, since the shareholder did not breach the contract it had entered into with the other tender offeror).

Accordingly, the defendants have failed to state a cause of action for tortious interference with contractual relations.

## IV. CONCLUSION

Based on the foregoing, Counts Two, Four, and Five of the defendants' counterclaim will be dismissed. The Court will deny Barefoot's motion to dismiss the defendants' breach of fiduciary duty claim. An appropriate order follows.