**FINANCIAL MATTERS, INC.
et al., Plaintiffs,**

**v.**

**PEPSICO, INC. and Monsieur Henri
Wines, Ltd., Defendants.**

**No. 92 Civ. 7497 (RO).**

United States District Court,
S.D. New York.

Nov. 17, 1992.

Baer Marks & Upham, New York City, for plaintiffs; Howard Graff, Deborah A. Skakel, Peter E. Cooper, of counsel.

Weiss Dawid Fross Zelnick & Lehrman, P.C., New York City, for defendant Pepsi-Co; Allan Zelnick, Lisa Pearson, of counsel.

Buchman & O'Brien, New York City, for defendant Monsieur Henri Wines; Lewis R. Shafer, of counsel.

OPINION AND ORDER

OWEN, District Judge.

Financial Matters, Inc. ("FMI") and Modern Classic Marketing, d/b/a Stolichnaya Import company, move for a preliminary injunction against PepsiCo and Monsieur Henri Wines. PepsiCo and MHW cross-move for an injunction against plaintiffs. At issue are the trademark rights in "Stolichnaya" vodka.

On this record, the following appears. In 1973 PepsiCo entered into an agreement with Sojuzplodoimport ("SPI"), the Soviet state-controlled bureaucracy that controlled all agricultural exports from the U.S.S.R., to export Pepsi–Cola syrup to the Soviet Union, and to receive in return the exclusive right to import Stolichnaya Vodka into the United States. SPI received trademark registration for the Stolichnaya mark in the United States in 1967. In 1969, SPI purported to assign all its rights in the mark to Kraus Bros. & Co.; SPI designated MHW, Kraus' subsidiary, as SPI's representative in its trademark application. PepsiCo acquired Kraus and MHW in order to secure its right to import the Stolichnaya Vodka. The mark became incontestable in 1974 on the filing of the requisite affidavit of continuous use. PepsiCo also owns the mark "Stoli."

Upon its acquisition of the Stolichnaya import rights, PepsiCo set up a system for approving potential suppliers, establishing quality specifications, assisting distilleries in improving their product, testing the final product, and rejecting unsuitable shipments.[1] PepsiCo was thus instrumental in creating a domestic American product of consistently high quality and uniform characteristics. Since 1972, PepsiCo and MHW have expended over $100 million to popularize Stolichnaya vodka in the U.S.[2] PepsiCo

---

1. "Stolichnaya" in Russia refers to a particular recipe for brewing vodka, not to a particular distillery; thus, physical characteristics of vodkas made by various Russian distilleries vary greatly. As the president of SPI declared in his affidavit of October 28, before the dissolution of the USSR there were over 200 distilleries in the Soviet Union that could produce Stolichnaya vodka.

2. In 1977, PepsiCo acquired the Pizza Hut restaurant chain. Since Pizza Hut restaurants serve liquor, and since various states forbid a manufacturer, importer or wholesaler of liquor products from retaining any interest in premises where alcoholic beverages are sold ("Tied House" laws), PepsiCo divested itself of the ownership of MHW when it acquired Pizza Hut. However, PepsiCo retained ownership of the

approved only seven distilleries in the USSR to produce and export Stolichnaya vodka to the U.S., and imported Stolichnaya vodka has come from these same seven distilleries over the past twenty years of PepsiCo's control.[3]

In 1983, PepsiCo assigned to SPI the Stolichnaya trademark registration, as well as its pending application to register Stoli. In June, 1991, SPI reassigned to PepsiCo all of its right, title and interest in and to the said marks. That agreement was amended on February 6, 1992, after the dissolution of the USSR, by deleting paragraph 8, which had conferred a right upon the now-defunct Soviet government to request the reassignment of the marks back to SPI at will.

In August, 1991, the USSR patent office cancelled SPI's registration in Russia for Stolichnaya on the ground that Stolichnaya had come to identify a type rather than a brand of vodka in the USSR. An opinion by the patent office clarifying that decision notes that under Russian law, the ownership and validity of rights in marks outside Russia is independent of such rights in Russia, and that the cancellation of the mark in Russia should not affect rights outside Russia. Furthermore, pursuant to Article 6(3) of the International Convention for the Protection of Industrial Property, the "Paris Convention," to which both the U.S. and Russia are signatories, a mark duly registered in one country is independent of marks registered in other countries, even including the country of origin.

When the USSR collapsed in December 1991, SPI became a private joint stock company which succeeded to the same rights as its governmental predecessor; these rights were confirmed by the statements of various Russian government officials and trade representatives of the Russian Federation in the United States. PepsiCo, MHW and SPI have continued their business relationship virtually unchanged.[4]

Plaintiffs, however, base their claim for a preliminary injunction on Russian decree No. 213, of November 16, 1991, which gives export rights to each entity for its own products. That decree, however, does not purport to grant any import rights into any other country. In June, 1992, the Terek, a vodka distillery in the Republic of North Ossetia, one of twenty autonomous regions within the Russian Republic, executed an agreement with FMI, agreeing to sell Stolichnaya vodka to FMI for resale anywhere in the world, including the United States.[5] Basing their right in large part on Decree No. 213, FMI and the Terek are now disputing PepsiCo and MHW over who presently possesses the valid right to the importation and distribution of Stolichnaya vodka.

Beginning in June 1992, MHW became aware that plaintiffs were soliciting MHW's customers, telling them that MHW no longer had the right to import Stolichna-

---

Stolichnaya mark, and entered into an agreement with MHW under which MHW agreed to continue importing the vodka made by the same distilleries. PepsiCo, as the trademark owner, continued to monitor the nature and quality of the vodka as it had done before, and it continued to receive a royalty based on sales from MHW. It is irrelevant that the consuming public does not know that it is actually PepsiCo who owns the mark. It is well-established that the public need not know the name of the trademark owner for their to be goodwill in a mark, nor does the name of the owner have to appear on the product itself.

3. Since the dissolution of the Soviet Union in December, 1991, PepsiCo has ceased importing Stolichnaya vodka from one of the distilleries, now located in Ukraine. The remaining six distilleries are all located within the Russian federation.

4. In addition, PepsiCo's attorney argued before the Court that PepsiCo continues to do business with the same SPI staff in the same manner as they had done when the USSR was extant, and that the new SPI still operates out of the same physical facilities as the old state-run SPI. With respect to plaintiffs' claims that SPI did not undertake the requisite privatization procedures authorized by the Russian government, I note only that the situation in the former USSR is volatile. Nobody knows precisely what procedures were undertaken by SPI to privatize, but all the evidence seems to indicate that this new private joint-stock company is indeed carrying on the functions of the old SPI.

5. Terek was among the distillers that produced non-export quality vodka labeled Stolichnaya for local consumption. SPI has rejected Terek twice as a supplier.

ya vodka into the U.S., but rather that plaintiffs were the new exclusive authorized importers. Terek and its affiliated joint-venture export company, Vladico, have assigned exclusive import rights and purported U.S. trademark rights in the Stolichnaya brand to at least three different companies: Oxford Trading Company, LRJS Enterprises of California, and plaintiff FMI.

In October 1992, the deputy Prime Minister of North Ossetia issued a decree stating that all rights to trademarks and any sales of Stolichnaya belong only to the Terek and the other Russian liquor-making factories. That statement declares that SPI had no rights in the mark as of 1991, when it purported to transfer its rights to PepsiCo.

FMI argues that even if SPI did have authority to transfer the marks back to PepsiCo in 1991, paragraph 8 of the PepsiCo assignment obligated PepsiCo to return the mark to its rightful Russian owners. The North Ossetian government claims to be the exclusive legal successor of the USSR for the purposes of the agreement between SPI and PepsiCo, and demands the return of the mark, with the Terek factory claiming the right to it.

■■■ FMI argues that ownership of a trademark is acquired through ownership of the goodwill associated with the trademark. They argue that PepsiCo cannot own the goodwill of the Stolichnaya marks, because PepsiCo's compliance with state liquor laws precludes it from controlling the goodwill associated with the marks and has forced it to abandon the marks, and also because PepsiCo has admitted that the goodwill of the marks is either "in the bottle" or in its "Russian-ness" and that they are merely a foreign outpost of that goodwill. However, I conclude that plaintiffs fundamentally misperceive U.S. trademark law. PepsiCo has satisfied the Lanham Act's requirement of registration and continuous use. The registrations have achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and PepsiCo is conclusively presumed to have the right to exclusive use of the marks. *Park and Fly v. Dollar Park 'N Fly*, 469 U.S. 189, 196, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). Indeed, PepsiCo has been using the mark continuously for over twenty years, and has built up a multi-million dollar business. PepsiCo has popularized the vodka through expenditures of over $100 million. Not only was PepsiCo the first user of the mark; it is undisputed that plaintiffs have never used or registered the mark in the U.S. The underlying right to a mark depends upon its actual use. *Basile, S.p.A. v. Basile*, 899 F.2d 35, 37 n. 1 (D.C.Cir.1990). PepsiCo need not be the manufacturer, importer or distributor of the goods sold under its mark in order for the mark and PepsiCo's ownership of it to be valid. A trademark owner may delegate the responsibility of daily control over the quality of the product to a reliable party if it wishes, without relinquishing a mark. *See Premier Dental Products Co. v. Darby Dental Supply Co., Inc.*, 794 F.2d 850, 856 (3d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). Indeed, § 5 of the Lanham Act, 15 U.S.C. § 1055 provides that use by a related company inures to the benefit of the trademark registrant. The public need not know the name of the trademark owner, so long as consumers associate the mark with a single source. *Premier Dental Products*, 794 F.2d at 856, *citing Coty Inc. v. LeBlume Import Co., Inc.*, 292 F. 264, 267 (S.D.N.Y.), *aff'd* 293 F. 344 (2d Cir.1923).

■■■ FMI next alleges that PepsiCo acquired its trademark through deception, by falsely representing that it was the unconditional owner of the marks, when it never actually had such rights because after 1977 it no longer qualified as an owner for a trademark associated with a liquor product, and because its rights were conditional. Plaintiffs fail, however, to bring this case within the fraud defense to incontestable registrations, § 33(b)(1) of the Lanham Act, 15 U.S.C. § 1115(b)(1). PepsiCo did have the right to own the marks; the Trademark Office does not record or preserve transfer agreements or assignments. Rather, it is arguably plaintiffs who might well be accused of misstatement for claiming that

MHW is no longer selling genuine Stolichnaya vodka, and for alleging that the Terek vodka is in fact genuine Stolichnaya vodka for U.S. importation.

PepsiCo and MHW, on the other hand, cross-move for a preliminary injunction against FMI. MHW has a multi-million dollar business, built up over more than 20 years. PepsiCo and MHW claim that plaintiffs will suffer no irreparable injury, their request for relief has been inordinately delayed, defendants will suffer catastrophic results if the order is entered, and the result sought will destroy, rather than maintain, the status quo. Also, they maintain that plaintiffs' claims must fail on the merit. Terek has never used the mark here, and has no registration here or anywhere else, and thus no basis to claim trademark rights under U.S. law. Plaintiffs cannot have greater rights in the U.S. than their assignor has.

Plaintiffs' North Ossetian proclamation stating that Terek has the rights in the mark does not have legal force in the U.S., even assuming *arguendo* its validity in Russia.[6] A declaration by a purported government official in North Ossetia does not reflect any official position of the Russian government: North Ossetia is only one of the twenty autonomous republics of the Russian federation, is not recognized as sovereign by the U.S., and has no authority to speak on behalf of the Russian federation.[7] The Act of State doctrine does not apply here; no sovereign state recognized by the U.S. has made any proclamation, and furthermore, such a decree purporting to expropriate property located within the United States is without effect. *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666–67 (2d Cir.1988). Indeed, I note in this connection that James Burke, president of FMI, stated at his recent deposition that this North Ossetian declaration was actually prepared by FMI's counsel in New York, taken to Moscow, and faxed to the North Ossetian Deputy Prime Minister to sign. Furthermore, that proclamation, even if valid, purports to grant the right to use the Stolichnaya mark to Terek and "all other liquor making factories"—at least six of those factories are stockholders in SPI and are distillers who have been supplying MHW all along. Plaintiffs state that Terek has been appointed as the designated spokesman for all other factories, but they submit no evidence or agreements indicating that such is indeed the case.[8]

Under the concept of territoriality, which is basic to trademark law, "trademark rights exist in each country solely according to that country's statutory scheme." *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir.1985), *citing Ingenohl v. Walter E. Olsen & Co.*, 273 U.S. 541, 544, 47 S.Ct. 451, 452, 71 L.Ed. 762 (1927). The function of a trademark is not necessarily to specify the origin of a product, but rather "to symbolize the domestic goodwill of the domestic markholder so that the consuming public may rely with an expectation of consistency on the mark by its owner ..." *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 910 (E.D.N.Y.1988). The domestic trademark owner need not produce or manufacture the products sold under the mark.

FMI's claim of ownership of the marks in the U.S. is based not on use or registration in the U.S. by Terek, but solely on the aforementioned proclamation of the North Ossetian deputy prime minister. Plaintiffs' activities seem to be a clear violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibiting the sale of "imitation" goods of questioned quality that are likely to deceive or to

---

6. Plaintiffs fail to explain how Terek or anyone else can be the owner of the Stolichnaya mark inside Russia, since the Russian patent office has clearly stated that the mark is in the public domain inside Russia. However, this issue is irrelevant to the status of the U.S. trademark right.

7. So stated by Robert Ruzanov, the authorized U.S. Trade Representative of the Russian Federation in the United States.

8. As PepsiCo notes, plaintiffs seem to be claiming that SPI's rights now belong to the Russian people, and that somehow Terek embodies the Russian people and can therefore assign its rights to FMI.

cause confusion among buyers. Regardless of any rights that Terek may or may not have in Russia, they do not have rights in the U.S. in the face of the valid, incontestable U.S. trademark. Stolichnaya vodka in the U.S. is the vodka imported by MHW, PepsiCo's authorized importer and distributor, under that brand name for the last twenty years. Vodka imported into the U.S. through a source other than PepsiCo may not be called "Stolichnaya." Foreign use is ineffectual to create trademark rights in the U.S. *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n. 4 (2d Cir.1974); *Persons Co., Ltd. v. Christman*, 900 F.2d 1565, 1568 (Fed.Cir.1990).

Plaintiffs in the final analysis have failed to establish on this record that they will suffer any irreparable injury if an injunction in their favor is denied. Plaintiffs have no certificate of label approval from the Federal Bureau of Alcohol, Tobacco and Firearms, without which they may not lawfully import or sell vodka. They have no import license, no inventory of any kind in the U.S., and no firm delivery dates for the approximately ten orders they have received from U.S. distributors, who have agreed to wait until this case is resolved. There is no evidence that Terek vodka, which is bottled and perhaps blended in Budapest, meets Russian export standards or PepsiCo's standards. Indeed, this whole situation appears basically to have been seen by president Herbik of plaintiff Import, and presumably others, as a unique opportunity to succeed to an enormously popular franchise developed by MHW; clearly, plaintiffs are presenting their product as the same vodka that has been imported and sold by defendants for 20 years. The use of the Stolichnaya trademark for vodka that seems likely to be inferior to, and is admittedly different from, the vodka that MHW has been selling for twenty years, could destroy the Stolichnaya mark and goodwill that PepsiCo and MHW have built up. It is certainly clear from this vantage point that were things to proceed without judicial intervention, a likelihood of confusion as to the source of the product would exist, and that showing alone in the setting before me is sufficient to establish that there is a risk of irreparable harm to the reputation of the trademark. *See General Motors Corp. v. Gibson Chemical & Oil Corp*, 786 F.2d 105, 109 (2d Cir.1986); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 79 (2d Cir.1985).

PepsiCo and MHW having on this record overwhelmingly shown irreparable injury and a likelihood of success on the merits, their cross-motions for preliminary injunctive relief against plaintiffs are granted, and plaintiffs are accordingly enjoined from proceeding further as purported importers of Stolichnaya vodka, and from soliciting purchase orders for their infringing Stolichnaya vodka, and from representing to the U.S. trade or customers that they own the marks, or that they have the right to import or sell vodka under those marks, or that MHW does not have this right. Plaintiffs' original motion is accordingly necessarily denied.

The foregoing is so ordered. Defendants may, if desired, submit a formal order on notice carrying the foregoing into effect.