**Tommaso BUTI; Fashion World Company, Plaintiffs–Counter–Defendants–Appellees,**

v.

**Impressa PEROSA, S.R.L., Defendant–Counter–Claimant–Appellant.**

**No. 97, Docket 96–9630.**

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1997.

Decided Feb. 24, 1998.

---

David Jaroslawicz, New York City (Robert J. Tolchin, Jaroslawicz & Jaros, of counsel), for Defendant–Counter–Claimant–Appellant.

Judd Burstein, Burstein & Fass, New York City (Samuel I. Burstyn, Miami, FL, Miguel M. de la O, de la O, Marko & Wang, Miami, FL, Robert W. Cinque, Cinque & Cinque, New York City, on the brief), for Plaintiffs–Counter–Defendants–Appellees.

Before KEARSE and CABRANES, Circuit Judges, and COTE, District Judge.*

COTE, District Judge:

Defendant Impressa Perosa, S.R.L. ("Impressa") appeals from an August 9, 1996 Memorandum Decision of the United States District Court for the Southern District of New York (Schwartz, J.) granting summary judgment to plaintiffs Tommaso Buti and Fashion World Company (referred to collectively as "Buti") on their claim for a declaratory judgment that Impressa has no rights under federal trademark law in the name "Fashion Cafe" for restaurant services and clothing in the United States. The District

---

* The Honorable Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

Court also granted summary judgment to Buti on Impressa's counterclaims, dismissing with prejudice the federal trademark counterclaims and declining to exercise supplemental jurisdiction over, and thus dismissing without prejudice, the state law counterclaims. The District Court's opinion adopted, and relied heavily upon, the Report and Recommendation ("Report") of Magistrate Judge Peck, with the exception of a recommendation to impose sanctions against Impressa, which the District Court denied. For the reasons set forth below, we affirm in full the decision of the District Court.

## BACKGROUND

As Magistrate Judge Peck observed in his Report, none of the parties' various disputes regarding the record facts are material to the core legal issue that both sides agree governs this case, namely, whether Buti or Impressa first used the contested mark "Fashion Cafe" in "commerce," within the meaning of the Lanham Act. *See Buti v. Impressa Perosa, S.R.L.*, 935 F.Supp. 458, 464 (S.D.N.Y.1996).

In 1987, Impressa opened an establishment called the Fashion Cafe, which the Report describes as "a 'bar with a cafeteria,' not a restaurant," in Milan, Italy. Along with his interest in that business, Impressa's principal, Giorgio Santambrogio ("Santambrogio"), also is part owner of several other Italian concerns, including a modeling agency known as Fashion Model Management, and a restaurant called the Grand Fashion Cafe, which formally opened in Milan in February 1995; neither of the latter businesses is at issue in this case. Impressa registered the trademark Fashion Cafe in Italy in April 1988, and Santambrogio asserts that he purchased the name from Impressa several years thereafter for the purpose of developing such establishments around the world.

It is undisputed that Impressa never opened a Fashion Cafe or any other restaurant or store in the United States, nor did the company ever conduct any formal advertising or public relations campaign in this country for its Milan Fashion Cafe. Nevertheless, Santambrogio did submit evidence that he promoted the Fashion Cafe during visits to the United States by distributing "literally thousands of T-shirts, cards, and key chains with the [Milan] Fashion Cafe name and logo to persons associated with the modeling and fashion industry which entitled them to free meals" at the Fashion Cafe. *Id.* at 466 (alteration in original). Santambrogio also maintains that he actively negotiated with at least one well-known restaurateur for the purpose of opening a Fashion Cafe "theme restaurant" in New York City; in addition, he claims to have devised a plan to put a Fashion Cafe establishment in hotels in major cities throughout the United States, but admits taking no actual steps to implement this "fantasy," which existed only "in [his] brain." *Id.* at 466 & n. 6.

In May 1993, Buti opened a restaurant, also called the Fashion Cafe, in Miami Beach, Florida. In the summer of 1994, he commenced a plan to open a "franchise" of Fashion Cafe theme restaurants, which would focus on the fashion model industry by displaying fashion photographs and tapes of televised fashion shows, and marketing associated apparel and souvenirs. Pursuant to that plan, Buti hired a law firm to perform a trademark search of the Fashion Cafe name, and when the search revealed no use or registration of the name in the United States, he filed an application with the Patent and Trademark Office to register the mark Fashion Cafe. Anticipating a spring 1995 opening for his New York City Fashion Cafe, Buti publicized the restaurant's December 1994 groundbreaking through publicity and promotions involving, *inter alia*, appearances by well-known models, all of which "generated thousands of television, newspaper and magazine articles worldwide." *Id.* at 465. The New York Fashion Cafe formally opened in April 1995, another opened thereafter in New Orleans, and several more were under construction as of the time of the District Court litigation.

In December 1994, upon learning of Buti's planned opening of his Fashion Cafe in New York, Impressa attempted to register that name with the Patent and Trademark Office. In January 1995, counsel for Impressa sent a "cease and desist" letter to Buti, threatening litigation if he did not refrain from using the

Fashion Cafe name. Buti responded by filing the present action, on May 17, 1995, alleging federal question jurisdiction and naming Impressa as the sole defendant. The Complaint seeks primarily a declaratory judgment "[t]hat Defendant does not have rights in the trademark 'Fashion Cafe' for restaurant services or clothing in the United States." The Complaint also requests various other forms of equitable relief, including a declaration that Buti did not compete unfairly with Impressa, nor infringe Impressa's trademark rights (if any) in the Fashion Cafe name, by advertising or operating Buti's restaurants; a declaration that Buti did not misrepresent the origin of his restaurant services; and an injunction preventing Impressa from filing or threatening to file an infringement suit against Buti.[1]

Impressa answered and asserted five counterclaims, alleging that Buti (i) infringed on Impressa's rights in the Fashion Cafe name, giving rise to a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (ii) misappropriated Impressa's concepts and the name Fashion Cafe; (iii) engaged in unfair and deceptive business practices in violation of New York General Business Law Section 349 *et seq.;* (iv) committed acts constituting common law unfair competition; and (v) caused Impressa such harm through the aforementioned conduct as to entitle Impressa to an injunction. After Buti moved to dismiss the counterclaims, pursuant to Rule 12(b)(6), Fed.R.Civ.P., Impressa filed an amended answer and counterclaims, adding a sixth counterclaim alleging that Buti made false representations in his application for trademark registration, in violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120.

After the close of discovery, Buti moved for summary judgment on his declaratory judgment claim and in addition requested that his motion to dismiss the counterclaims be converted to one for summary judgment, under Rule 56, Fed.R.Civ.P.; that request was granted, and Buti submitted additional papers in support of the latter motion. Although Impressa failed to move for summary

judgment on its own claims, its opposition to Buti's motion did contain a request that the court "search the record" and grant Impressa summary judgment on the counterclaims; the District Court therefore considered the motions before it to be cross-motions for summary judgment.

Magistrate Judge Peck, to whom the motions were referred, recommended that the District Court grant Buti's motion for summary judgment, awarding him a declaratory judgment that Impressa has no rights in the mark Fashion Cafe in the United States, and dismissing all of Impressa's counterclaims. The determinative conclusion, with respect to both the declaratory judgment claim and the federal trademark counterclaims, was that Impressa did not "use" the Fashion Cafe name "in commerce" within the meaning of the Lanham Act prior to Buti's registration and use of the name. Specifically, Magistrate Judge Peck found, based largely on decisions of the Trademark Trial and Appeal Board ("TTAB"), that Santambrogio's efforts in the United States to advertise and promote the Milan Fashion Cafe were insufficient to satisfy the statutory standard for "use in commerce" because the restaurant services associated with that advertising were provided solely in Milan, Italy, outside the scope of United States "commerce." The District Court adopted in full these core conclusions regarding the trademark claims, and in addition adopted the recommendation to refrain from exercising supplemental jurisdiction over Impressa's state law counterclaims. Thus the District Court awarded Buti a declaratory judgment, dismissed Impressa's federal counterclaims with prejudice, and dismissed the state law counterclaims without prejudice.

## DISCUSSION

Even when viewed in the light most favorable to Impressa, as is required here pursuant to our *de novo* review of the grant of summary judgment to Buti, *see Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996), the record in this case makes clear that no genuine dispute exists as to any material factual

---

1. Contemporaneous with the entry of judgment, Judge Schwartz granted an order amending the

Complaint by interlineation to remove Buti's claims for compensatory and punitive damages.

issue, and that Buti was and is entitled to judgment as a matter of law. The parties' agreement concerning the essential facts and governing legal framework leave the issue on appeal quite narrow. Both sides agree that the critical question in determining their respective rights in the Fashion Cafe name is which party first "used" the name "in commerce" as that phrase is defined by Section 45 of the Lanham Act, 15 U.S.C. § 1127.

*"Use in Commerce"*

The Lanham Act authorizes trademark registration only for marks that are "used in commerce." 15 U.S.C. § 1051. In the context of the restaurant "services" at issue in this case, "use in commerce" is defined by Section 45 of the Lanham Act as:

> bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. . . .
>
> [A] mark shall be deemed to be in use in commerce . . . on services when it is *used or displayed in the sale or advertising of services and the services are rendered in commerce,* or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127 (emphasis added). Impressa asserts, and Buti accepts, that the italicized portion of the definition is the section applicable in this case.

▇▇ As discussed at length below, the parties' disagreement with respect to the meaning of Section 45 centers on Impressa's contention that Santambrogio's advertising and promotional activities in the United States constituted sufficient "use" of the Fashion Cafe name "in commerce" as to merit protection under the Lanham Act. Notwithstanding this disagreement over the statutory concept of "use," however, the parties are in complete accord as to the meaning under Section 45 of "commerce." That is, Impressa and Buti acknowledge, as they must, that "commerce," for purposes of delimiting "use in commerce" under the Lanham Act, is expressly defined by Section 45 to be "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. We recently affirmed that the "history and text of the

Lanham Act show that 'use in commerce' reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause." *United We Stand America, Inc. v. United We Stand, America New York, Inc.,* 128 F.3d 86, 92 (2d Cir.1997). *See also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:117 & n. 2 (4th ed.1997) (citing *Trade–Mark Cases,* 100 U.S. 82, 25 L.Ed. 550 (1879), for proposition that "the power of Congress to register marks stems only from the 'Commerce Clause' of the U.S. Constitution," U.S. Const., Art. I, § 8, cl. 3). The Supreme Court, moreover, has made clear that Congress's authority under the Commerce Clause extends to activity that "substantially affects" interstate commerce. *See United States v. Lopez,* 514 U.S. 549, 559, 115 S.Ct. 1624, 1629–30, 131 L.Ed.2d 626 (1995). In the trademark context, the limits of Congress's Commerce Clause authority are manifested by the cases that define the extraterritorial reach of the Lanham Act. In this Circuit, for example, the exercise of Lanham Act extraterritorial jurisdiction is governed by a three-factor analysis examining (i) whether the defendant is a United States citizen; (ii) whether the defendant's conduct had a "substantial effect" on United States commerce; and (iii) whether there is a conflict with trademark rights under foreign law. *See Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 642–43 (2d Cir.1956). *See also Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733, 745–46 (2d Cir.1994); *Totalplan Corp. of America v. Colborne,* 14 F.3d 824, 830 (2d Cir.1994); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.,* 955 F.Supp. 220, 225–29 (S.D.N.Y.1997).

This case, of course, involves the reverse, or perhaps the mirror image, of the issue presented in the *Vanity Fair* line of cases; we are concerned here not with the extraterritorial force of our trademark laws to regulate or redress the conduct of a foreign citizen in a foreign land, but with the ability of that foreign citizen to gain the protection of our trademark laws, and the degree of interaction with our nation's commerce that is required of him to receive that protection. Impressa nevertheless has implicitly

acknowledged, through several pivotal concessions, that the question whether it may derive the benefits of the Lanham Act is dictated by one of the same inquiries that guided the decision in *Vanity Fair*, namely, whether Impressa has conducted the affairs of its Milan Fashion Cafe in such a way as to "substantially affect" United States interstate or foreign commerce, and thereby fall within Congress's authority under the Commerce Clause. Thus Impressa conceded at oral argument that: (1) the food and drink services of the Milan Fashion Cafe form no part of the trade between Italy and the United States; and (2) Congress has no constitutional authority to regulate the operation of the Fashion Cafe in Milan. These admissions, even if only a recognition of the fact that Impressa's registration and use of the Fashion Cafe name in Italy has not, given the territorial nature of trademark rights, secured it any rights in the name under the Lanham Act, *see, e.g., Financial Matters, Inc. v. PepsiCo, Inc.*, 806 F.Supp. 480, 485 (S.D.N.Y.1992) (citing *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n. 4 (2d Cir.1974)); *Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568 (Fed.Cir.1990); 4 McCarthy §§ 29:1–29:3, nonetheless have dramatically narrowed the issue to be decided in this appeal.

*"Services Rendered in Commerce"*

 As indicated, the crux of the parties' dispute is whether Santambrogio's advertising and promotional activities in the United States on behalf of the Milan Fashion Cafe were sufficient to establish Impressa's "use in commerce" of the Fashion Cafe name, within the meaning of Section 45 of the Lanham Act, where it is undisputed that Impressa rendered no restaurant services, nor operated any other business, under that name in the United States. We believe the answer lies in first principles. The Supreme Court explained long ago that

> the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business.

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 50–51, 63 L.Ed. 141 (1918). *See also Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581, 583 (2d Cir.1990). *See generally* 2 McCarthy §§ 16:1–16:11. Accordingly, one who registers and owns a trademark thereby "acquires the right to prevent his goods from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks." *Pirone*, 894 F.2d at 581. The right so acquired, however, exists only "as a right *appurtenant to an established business or trade* in connection with which the mark is employed." *United Drug*, 248 U.S. at 97, 39 S.Ct. at 50 (emphasis added); *see also Pirone*, 894 F.2d at 583. Under this rule, therefore, Santambrogio's mere advertising of the Fashion Cafe mark, standing alone, did not constitute "use" of the mark within the meaning of the Lanham Act. *See, e.g., United Drug*, 248 U.S. at 97, 39 S.Ct. at 50–51; *Pirone*, 894 F.2d at 583; *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp. 96, 113 (S.D.N.Y. 1989) ("Mere advertisement of a product by use of a mark would not constitute common law trademark use.... [T]rademark rights develop when goods bearing the mark are placed in the market and followed by continuous commercial utilization.").

The question thus remaining—apparently one of first impression in the federal courts— is whether Santambrogio's promotional activities *in the United States* merited Lanham Act protection for Impressa's mark based on the ongoing business of Impressa's Fashion Cafe *in Milan*. We agree with Magistrate Judge Peck's conclusion, adopted by Judge Schwartz, that Santambrogio's activities in the United States were insufficient to establish "use in commerce" of the Fashion Cafe name absent proof that Impressa offered any restaurant services in United States commerce. *See Buti*, 935 F.Supp. at 470–71. As the Magistrate Judge correctly noted, although courts may not have "addressed the issue of whether U.S. advertising of a foreign business establishes United States trademark rights, the [TTAB] has, adversely to Impressa." *Id.* at 469.

The leading TTAB case in this area is *Mother's Restaurants Inc. v. Mother's Other Kitchen, Inc.*, 218 U.S.P.Q. 1046, 1983 WL 51992 (TTAB 1983), in which an American restaurant applied to register the mark "Mother's Other Kitchen," and was opposed on the ground of likelihood of confusion by a chain of Canadian restaurants operating under the name "Mother's Pizza Parlor." The opposer claimed that it had made prior use of its mark in commerce through advertisements broadcast on Canadian radio stations with signals reaching the United States and promotional materials and coupons distributed at information booths along U.S. tourist routes in southern Ontario. *Id.* at 1047–48. The TTAB rejected the opposition to the extent that it was based on a claim of prior use of the mark in the United States, concluding that

> prior use and advertising of a mark in connection with goods or services marketed in a foreign country (whether said advertising occurs inside or outside the United States) creates no priority rights in said mark in the United States as against one who, in good faith, has adopted the same or similar mark for the same or similar goods or services in the United States prior to the foreigner's first use of the mark on goods or services sold and/or offered in the United States. . . .

*Id.* at 1048. *See also Techex, Ltd. v. Dvorkovitz*, 220 U.S.P.Q. 81, 83, 1983 WL 51872 (TTAB 1983) (holding same where it was "clear that opposer d[id] not use its name in connection with the sale of goods or the performance of any service in the United States").[2]

**2.** The TTAB indicated that the only exception to the rule in *Mother's Restaurants*, other than—implicitly—where the prior United States user failed to act in good faith, would be when "it can be shown that the foreign party's mark was . . . a 'famous' mark within the meaning of *Vaudable v. Montmartre, Inc.*, [193 N.Y.S.2d 332] (N.Y.Sup. Ct.1959)." *Mother's Restaurants*, 218 U.S.P.Q. at 1048. In *Vaudable*, the owner of the well-known Paris restaurant Maxim's, which had received considerable publicity and recognition in the United States over many years, was granted a permanent injunction against the use of that name by a newly opened New York restaurant. *See* 193 N.Y.S.2d at 334–36; 4 McCarthy § 29:4. The "famous mark" exception has no application

The principle articulated in *Mother's Restaurants* was not new, the TTAB having said as much several times previously. *See, e.g., Intermed Communications, Inc. v. Chaney*, 197 U.S.P.Q. 501, 507–08, 1977 WL 22648 (TTAB 1977) (doctor who arguably had publicized a service mark in the U.S. was denied trademark registration due to a lack of evidence that the underlying services had been offered to anyone in the U.S. or in commerce before or contemporaneously with the application); *Oland's Breweries [1971] Ltd. v. Miller Brewing Co.*, 189 U.S.P.Q. 481, 489, 1975 WL 20951 (TTAB 1976) (noting that advertising of Canadian beer in magazines circulated in United States and on U.S. radio stations, targeting American tourists, "may not be sufficient to establish technical trademark use in the United States" even if it might cause confusion as to origin among U.S. consumers). *Cf. Greyhound Corp. v. Armour Life Ins. Co.*, 214 U.S.P.Q. 473, 474, 1982 WL 50420 (TTAB 1982) ("[A]dvertising of a service, without performance of a service, will not support registration."). Moreover, the TTAB continues to adhere to the *Mother's Restaurants* position today. *See, e.g., Linville v. Rivard*, 41 U.S.P.Q.2d 1731, 1735–37, 1996 WL 795315 (TTAB 1997) (Canadian company's promotion of its "Ultracuts" hair salons, including advertising by radio, television, newspaper that reached the United States, as well as handing out coupons and other materials at the North Dakota state fair, failed to "constitute[ ] use of the ULTRACUTS mark in commerce" because the company "rendered no hair dressing and beauty salon services in the United States during the relevant time period").[3] *See also* 4 McCarthy § 29:4 & n. 6.

here given that Impressa has made no claim under that doctrine and that the record would not support such an argument in any event.

**3.** Impressa makes much of the fact that the first decision of the TTAB in *Linville v. Rivard*, 26 U.S.P.Q.2d 1508, 1993 WL 156480 (TTAB 1993), on which Magistrate Judge Peck in part relied, was vacated and remanded on other grounds, 11 F.3d 1074, 31 U.S.P.Q.2d 1218 (Fed.Cir.1993). Even though the remand had no bearing on the aspects of the decision cited by the Magistrate Judge, we rely—as indicated in the text—solely on the TTAB's decision after remand in *Linville*, reported at 41 U.S.P.Q.2d 1731.

We have noted on many occasions that the decisions of the TTAB, while not binding on courts within this Circuit, are nonetheless "to be accorded great weight." *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir.1989); *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir.1971). *See also In re Dr Pepper Co.*, 836 F.2d 508, 510 (Fed.Cir. 1987) ("While the interpretations of the statute by the board are not binding on this court, under general principles of administrative law, deference should be given by a court to the interpretation by the agency charged with its administration."). We take particular comfort in our reliance on the TTAB decisions cited above because the principles enunciated therein rest on solid footing. As previously explained, the notion that trademark rights exist only as rights "appurtenant to an established business or trade in connection with which the mark is employed," *United Drug*, 248 U.S. at 97, 39 S.Ct. at 50–51, has an enduring pedigree. Even with respect to the specific question in this case—whether the domestic advertising of an exclusively foreign company's trademark constitutes "use" of the mark under the Lanham Act—the TTAB's answer in the negative represents a well-founded application of basic trademark doctrine. Indeed, we believe the Supreme Court reached essentially the same determination, albeit in *dicta*, eighty years ago:

> [T]he expression, sometimes met with, that a trade-mark right is not limited in its enjoyment by territorial bounds, is true only in the sense that *wherever the trade goes, attended by the use of the mark*, the right of the trader to be protected against the sale by others of their wares in the place of his wares will be sustained.

*Id.* at 98, 39 S.Ct. at 51 (emphasis added). Thus, the TTAB's ruling in *Mother's Restaurants* and other cases properly reserves United States trademark protection to those foreign companies whose actual "trade goes, attended by the use of [its] mark," into United States interstate or foreign commerce. So that the issue is no longer in doubt, we hold, in keeping with the TTAB's longstanding view and the District Court's decision in this case, that the mere advertising or promotion of a mark in the United States is insufficient to constitute "use" of the mark "in commerce," within the meaning of the Lanham Act, where that advertising or promotion is unaccompanied by any actual rendering *in the United States or in "commerce which may lawfully be regulated by Congress,"* 15 U.S.C. § 1127, of the services "in connection with which the mark is employed," *United Drug*, 248 U.S. at 97, 39 S.Ct. at 50–51.

None of Impressa's arguments on appeal alter our conclusion. First, Impressa suggests that the relevant question in this case is more properly "whether *Santambrogio's conduct* could lawfully have been regulated by Congress" (emphasis added), and Impressa endeavors at length to demonstrate that the advertising and promotional activities described above were "clearly within Congress' power to regulate under ... the Commerce Clause." We have no quarrel, of course, with Impressa's contention that, "[f]or example, Congress's consumer protection laws regulated the vouchers [that Santambrogio] distributed," and likely many other of his advertising activities in this country as well. But where the issue concerns what conduct is regulated by the Lanham Act, Impressa has got it precisely wrong by focusing on "Santambrogio's [advertising] conduct," as opposed to the business services in connection with which that advertising was performed. As Impressa has explicitly conceded in its briefs on appeal, it is *"the restaurant services"*—and not the advertising—that *"must have been 'rendered in commerce'"* (emphasis added) in order for Impressa's activities to fall within the "advertising of services" branch of Lanham Act Section 45. *See* 15 U.S.C. § 1127 (service mark is deemed used in commerce when, *inter alia*, "it is used or displayed in the sale or advertising of services *and the services are rendered in commerce*") (emphasis added).

Impressa also argues that the 1988 amendments to the Lanham Act, which revised Section 45's definition of "use in commerce," *see* the Trademark Law Revision Act of 1988, Pub.L. No. 100–667, § 134, 102 Stat. 3935, 3948 (1988), so broadened the language of the Act as to bring Impressa's activities

within its scope. Inasmuch as the amendments made no change to the portion of the "use in commerce" definition at issue here, Impressa's argument is based entirely on the legislative history of the amendments, specifically, a Senate report stating in part that "the revised definition of 'use in commerce' ... should be interpreted with flexibility so as to encompass various genuine, but less traditional, trademark uses, such as those made in test markets," etc. *See* S.Rep. No. 100-515, at 44-45 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5607-08. Impressa asserts that "[s]uch test market use of a trademark would certainly include Santambrogio's advertising of the name 'Fashion Cafe'" in the United States.

This argument is meritless, at least in the circumstances of this case. Simply put, there is insufficient evidence in the record to show that Santambrogio's advertising activities in this country constituted "test market use" of the Fashion Cafe name preparatory to the opening of a United States Fashion Cafe. To the contrary, the record indicates that Santambrogio was attempting primarily to promote the *Milan* Fashion Cafe by distributing T-shirts and other items, including meal vouchers, "to persons associated with the modeling and fashion industry which entitled them to free meals at the Fashion Cafe(s) in Milan." *Buti*, 935 F.Supp. at 466 (quoting Santambrogio Affidavit). Santambrogio's "fantasy" that he might one day open Fashion Cafe theme restaurants in hotels across America is insufficient to transform his advertising here into test market use. In sum, even aside from the dubious relevance of the Senate report given the clear language of the Lanham Act as revised, *see, e.g., United States v. Reyes*, 116 F.3d 67, 71 (2d Cir.1997) ("When the language of a statute is unambiguous, ... the judicial inquiry ends....") (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149-50, 117 L.Ed.2d 391 (1992)), Impressa has failed to demonstrate "test

market use" of the Fashion Cafe name such that its naked advertising in the United States—absent any rendering of restaurant services here—constituted "use in commerce" of the name within the meaning of the Act.[4]

In light of our conclusion that Impressa failed to use the Fashion Cafe mark "in commerce" prior to Buti's use thereof, we affirm not only the District Court's grant of summary judgment on Buti's declaratory judgment claim, but also the grant of summary judgment dismissing Impressa's federal trademark counterclaims. The first of those claims, for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), plainly fails given Buti's success in attaining a declaration that Impressa has no rights in the Fashion Cafe name. The second of the claims, for fraudulent trademark registration under Section 38 of the Lanham Act, 15 U.S.C. § 1120, is based on Impressa's contention that Buti knew of the Milan Fashion Cafe[5] and specifically chose that name for his restaurants in the United States despite—or because of—that knowledge. Thus the second federal counterclaim alleges that Buti "made false and fraudulent representations" in registering the Fashion Cafe mark, including false declarations that the mark "was not being used in commerce by other persons"—meaning United States commerce as defined by the Lanham Act—and that Buti "had a right to register" the mark as his own. Under our analysis above, however, Buti's representations were manifestly true, and even if made with knowledge of Impressa's use of the mark in Milan would not be proscribed by that section of the Lanham Act. *See Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1570 (Fed.Cir.1990) ("[k]nowledge of a foreign use does not preclude good faith adoption and use in the United States," absent circumstances of a "famous" mark or a "nominal" use "made solely to block the prior foreign user's planned expansion into the

---

4. In light of these shortcomings, we need not reach—and specifically express no opinion regarding—the validity of this putative "test market" exception to the statutory definition of "use in commerce," 15 U.S.C. § 1127.

5. For example, Impressa emphasizes that Buti is married to fashion model Daniela Pestova, who was apparently represented at one point by Santambrogio's modeling agency, Fashion Model Management.

United States"); 4 McCarthy § 29:3. Finally, we find no abuse of discretion in the District Court's decision to decline supplemental jurisdiction, under 28 U.S.C. § 1367, over Impressa's state law counterclaims.

## CONCLUSION

For all of the foregoing reasons, the decision of the District Court is affirmed in full.