**FINANCIAL TRUST COMPANY, INC. and Jeffrey E. Epstein, Plaintiffs,**

v.

**CITIBANK, N.A. and Citigroup, Inc. d/b/a "Citigroup," Defendants.**

**No. CIV.2002–108.**

District Court, Virgin Islands, D. St. Thomas and St. John.

June 19, 2003.

Maria Tankenson Hodge, Hodge & Francois, St. Thomas, VI, for the plaintiffs.

Gregory H. Hodges, Dudley, Topper and Feuerzeig, LLP, St. Thomas, VI, for the defendants.

## MEMORANDUM OPINION

MOORE, District Judge.

After careful consideration of the parties' written and oral arguments, I will deny the defendants' motions to dismiss for lack of personal jurisdiction and to transfer this case to New York. Further, I find that the amended complaint adequately states claims of breach of fiduciary duty and negligent misrepresentation. Finally, I will grant the defendants' motion to dismiss Counts I, II, III, and VI for failure to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement for fraud, but I will grant leave for the plaintiffs to amend their pleadings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In their amended complaint, Jeffrey E. Epstein ["Epstein"] and Financial Trust Company, Inc. ["FTC"] [collectively "plaintiffs"] allege that Citibank, N.A. ["Citibank"] and Citigroup, Inc. ["Citigroup"] [collectively "defendants"] misrepresented facts and fraudulently induced them to borrow $10 million to invest in a venture managed by AIG Global Investment Corporation ["AIG"]. The plaintiffs allege that the defendants failed to disclose information and negligently and fraudulently misrepresented facts concerning their relationship with AIG (Counts I, II, III, IV and VI), that the plaintiffs detrimentally relied on these misrepresentations (Counts I, II, III, and VI), and that the defendants breached their fiduciary duty to the plaintiffs (Count V). The plaintiffs seek rescission of the promissory note and punitive damages (Counts VI and VII). (Am. Compl.¶¶ 45–68.)

In April 1999, Dayle Davison ["Davison"], Vice President of Citibank in New York and Epstein's private banker, and other Citibank employees telephoned Epstein while he was in the Virgin Islands and recommended that the plaintiffs invest through placement agent Salomon Smith Barney ["SSB"], a "subsidiary or affiliate" of the defendants, in a collateralized bond obligation transaction managed by AIG. (Compl. ¶¶ 12, 24; Epstein Decl. ¶¶ 8–10; Davison Aff. ¶¶ 1, 102–18.) According to the plaintiffs, during the negotiations of this deal Davison represented to Epstein that he was "virtually assured of receiving an 18–20% return on [his] investment, with a possible return of as much as 30%" and assured him that Citibank was going to remain actively involved in the investment. (Epstein Decl. ¶ 11.)

After further discussion between Epstein and Davison, Citibank offered to loan Epstein $10 million on the express condition that the money be used exclusively to fund FTC's investment in the AIG-managed venture. (Id. ¶¶ 12–13.) On August 2, 1999, Epstein executed a promissory note in favor of Citibank in the amount of $10 million [the "1999 Note"]. (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss, Epstein Decl. ¶ 15; Mem. Of Law in Support of Defs.' Mot. To Dismiss, Ex. A.) In addition, Citibank and FTC entered into a hypothecation agreement. (Mem. Of Law in Support of Defs.' Mot. to Dismiss, Ex. B at 7.)

On June 15, 2000, Epstein executed and delivered to Citibank an amended and restated promissory note ["the Amended 1999 Note"] that superseded the 1999 Note. The Amended 1999 Note extended the maturity date of the 1999 Note to August 2, 2001. (Id. Ex. D.) In connection with the Amended 1999 Note, Epstein and FTC also signed an agreement entitled "First Amendment to Note and Affirma-

tion of Hypothecation Agreement and Certain Documents Referred to Therein" [the "first Extension Agreement"] in which they reaffirmed the Amended 1999 Note in its entirety, the Hypothecation Agreement, and each document and term thereunder. (*Id.* Ex. E.) Each of these documents—the original 1999 Note, the 1999 hypothecation agreement, the Amended 1999 Note, and the first Extension Agreement—contains clauses stating that New York law would govern the "construction, validity, and performance" of the 1999 Note and the Amended 1999 Note. (*Id.* Ex. A at 8–9; Ex. B at 7–8; Ex. D at 10; Ex. E at 2–3.)

Sometime in the spring of 2001, Epstein and FTC discovered that the AIG Investment was "suddenly and rapidly deteriorating." (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss, Epstein Decl. ¶ 20.) According to the plaintiffs, FTC's advisors contacted Davison and other employees of Citibank, and requested Citibank's help in coordinating the replacement of the AIG fund's manager. (*Id.* ¶ 21; Schantz Decl. ¶ 5.) In May 2001, Davison informed the plaintiffs that, in order to remove AIG as the fund manager, FTC would need sixty-six and two-thirds percent (66⅔ %) of the votes of income note holders. Because the plaintiffs did not know the identities or respective percentages of ownership of the other income note holders, they requested that Davison provide them with that information. The plaintiffs claim that Davison initially assured them that she would provide such information promptly, but later informed them that she was having difficulty obtaining the information from SSB, and recommended that they seek the infor-

mation from Chase Manhattan, the Trustee of the fund. (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss, Schantz Decl. ¶¶ 6–8. ) Chase Manhattan, however, referred the plaintiffs back to Citigroup. In June, the plaintiffs learned for the first time that AIG itself owned twenty-eight percent (28%) of the income notes of the AIG investment. Thus, plaintiffs would not need other income note holders with as much of an investment in the income notes as they originally had believed because AIG's interest would not count toward any vote to remove it as manager. In July 2001, the plaintiffs finally received the information they had requested from Citibank. (*Id.* ¶¶ 9–10.)

At this time, Davison and SSB representatives urged the plaintiffs not to attempt to seek to remove AIG as the fund manager. In August 2001, FTC's attorney arranged a telephone conference with representatives from Citibank and SSB. Plaintiffs contend that during this conference they learned for the first time that Citibank could not assist them in seeking to remove AIG because SSB had an investment banking relationship with AIG that might be adversely affected by such an action. (*Id.* at ¶¶ 11–13.)

On June 11, 2002, the plaintiffs filed their complaint in this Court. One month later on July 11, 2002, Citibank sued the plaintiffs in the Southern District of New York, alleging that they had defaulted on both the loan at issue here and a second $10 million loan.[1] *See Citibank, N.A. v. Epstein,* Index No. 02–CV–5332–SHS (S.D.N.Y.2002). On November 27, 2002, I

---

1. Sometime in 2000, Davison informed Epstein about a second, similar investment fund to be managed by Mass Mutual [the "Mass Mutual Fund"]. On June 15, 2000, Epstein borrowed an additional $10 million from Citibank, that Epstein agreed to invest in the Mass Mutual Fund. (Mem. Of Law in Support of Defs.' Mot. To Dismiss, Ex. D.) Although the plaintiffs have stated an intent to seek to amend the complaint to include claims related to the Mass Mutual Fund, they have not yet done so. (*See* Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss at 12 n. 12.)

issued an order restraining Citibank and Citigroup from pursuing their New York lawsuit pending decisions on these motions. *Financial Trust Co., Inc. v. Citibank, N.A.,* Order, Civ. No.2002–108 (D.V.I. Nov. 27, 2002). In light of subsequent events, however, I *sua sponte* vacated this prohibition. *Financial Trust Co., Inc. v. Citibank, N.A.,* Order, Civ. No.2002–108 (D.V.I. Dec. 13, 2002).

The defendants charge that plaintiffs' suit in the Virgin Islands is merely "a transparent attempt to launch a preemptive strike to hamper Citibank's efforts to recover the $20 million in promissory notes . . . upon which Epstein has defaulted." (Mem. Of Law in Support of Def.'s Mot. To Dismiss at 2.) The defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or alternatively, to transfer this case to the Southern District of New York under 28 U.S.C. § 1404(a). Finally, the defendants aver that the amended complaint fails to state a cause of action upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) and does not allege fraud with the requisite particularity as required by Federal Rule of Civil Procedure 9(b). I address each argument in turn.

## II. DISCUSSION

### A. This Court has Personal Jurisdiction over Citibank and Citigroup

The defendants maintain that Citibank discontinued its presence in the Virgin Islands in 1999 and that Citigroup is merely a holding company that "does not have and never has had any assets, offices or employees in the Virgin Islands." In addition, the defendants insist that the events giving rise to this cause of action have no connection with the Virgin Islands. (Mem. of Law in Support of Defs.' Mot. to Dismiss at 6–9.) The plaintiffs counter that the defendants are currently doing business in the Virgin Islands and that this Court has jurisdiction over the defendants under the Virgin Islands' Long–Arm Statute. The plaintiffs insist that the defendants' depiction of Citigroup as a "holding company" is belied by Citigroup's public disclosures that the plaintiffs claim do not identify Citibank as a separate subsidiary or affiliate of Citigroup. (Pls.' Mem. Of Law in Opp'n to Mot. to Dismiss at 16–24.)

I agree with the plaintiffs and find that this Court has personal jurisdiction over the defendants under the Virgin Islands Long–Arm Statute and that, under the United States Constitution, the defendants have had enough "minimum contacts" with the Virgin Islands to require them to defend a lawsuit in this jurisdiction. This Court sitting in diversity exercises personal jurisdiction over a non-resident defendant pursuant to the forum's long-arm statute and in compliance with the Due Process Clause of the Fourteenth Amendment's "minimum contacts" requirement. *See In re Tutu Wells Contamination Litig.,* 846 F.Supp. 1243, 1264 (D.Vi.1993) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). When a defendant moves under Rule 12(b)(2) to dismiss for lack of personal jurisdiction, the plaintiff must make a *prima facie* showing of sufficient contacts between the defendant and the forum territory to support *in personam* jurisdiction, *see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992), and the court must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, *see Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 143 n. 1 (3d Cir.1992). The nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state. *See World-*

*Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

1. *This Court has Personal Jurisdiction over the Defendants under the Virgin Islands Long–Arm Statute*

The Virgin Islands long-arm statute, 5 V.I.C. § 4903, provides, in relevant part:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this territory;

.    .    .    .    .

(3) causing tortious injury by an act or omission in this territory;

(4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory . . . .

5 V.I.C. § 4903. Under subsection (a)(1), the term "transacting any business" can be satisfied by "only a single act which in fact amounts to the transaction of business within a state or territory." *Guardian Ins. Co. v. Bain Hogg Int'l Ltd.,* Civ. No.1996–180, 2000 WL 1690315, \*\*2–3, 2000 U.S. Dist. LEXIS 17184 at \*8 (D.V.I. October 26, 2000) (quoting *Godfrey v. International Moving Consultants, Inc.,* 18 V.I. 60, 66–67 (D.V.I.1980)). It is sufficient, therefore, that Citibank entered into a contract with a Virgin Islands resident, and that the defendants solicited the plaintiffs—while they were in the Virgin Islands—to borrow $10 million to invest in the AIG-managed fund.

■ With respect to the relationship between Citibank and Citigroup and the relationship between the defendants and the plaintiffs, I find that the plaintiffs have established that Citibank and Citigroup are sufficiently linked. For example, Citigroup's website plainly states that it does business through Citibank and other units throughout the world. Indeed, during oral argument on these motions, the defendants presented a letter sent to Epstein concerning the loans, identifying the two as linked together as "Citigroup, private bank" and "The Citigroup Private Bank, Citibank, N.A." At least at this preliminary stage, I find that Citibank and Citigroup are involved in the subject matter of this litigation. Accordingly, I conclude that this Court has jurisdiction under the Virgin Islands Long–Arm Statute over *both* the defendants.

2. *The Defendants' "Minimum Contacts" in the Virgin Islands Meet the Constitution's Due Process Requirements*

In addition to finding jurisdiction under this forum's long-arm statute, I must also determine whether the defendants' conduct here in the Virgin Islands rises to the level of "minimum contacts" as required by the Constitution. The Due Process Clause of the Fourteenth Amendment requires that a court determine whether a defendant had the "minimum contacts" with the forum necessary for the defendant to have "reasonably anticipated being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. A finding of minimum contacts demands the demonstration of " 'some act by which the defendant purposely availed itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws.' " *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 203 (3d Cir.1998). A plaintiff can meet this burden in one of two ways:

by establishing specific or general jurisdiction over a defendant. *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir.1990). A court's general jurisdiction "is based on the defendant's general business contacts with the forum [territory] and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996). Under this test, the plaintiff must establish that the defendant's contacts with the forum jurisdiction are "continuous and systematic." *Id.*

I find that this Court has general jurisdiction over the defendants. Citibank operated bank branches and marketed and provided banking services in the Virgin Islands for years before and after April 1999 and until 2002, just months before the commencement of this litigation. On January 31, 2002, Citibank closed its last remaining bank branch in the U.S. Virgin Islands, and Citibank no longer makes real estate-related loans in the Virgin Islands. (Malins Aff. ¶¶ 3–4.) Citibank, however, continues to process its outstanding loans here via its Puerto Rican offices, and initiates litigation in this Court. (*Id.* ¶ 5.) All of the foregoing plainly demonstrates that Citibank, and Citigroup through Citibank, have continuously and systematically conducted business in the Virgin Islands—including initiating contact with the plaintiffs for the loans that are the subject of this litigation—and therefore, are subject to this Court's general jurisdiction. *See, e.g., Metropolitan Life Ins. Co.*, 84 F.3d at 569 (finding that "our review of general jurisdiction cases reveals that contacts are commonly assessed over a period of years prior to the plaintiff's filing of the complaint" and listing cases). Accordingly, I will deny the motion to dismiss for lack of personal jurisdiction.

Having found that minimum contacts exist, I must decide whether compelling these out-of-territory defendants to submit to jurisdiction in the Virgin Islands comports with traditional notions of fair play and substantial justice. *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3d Cir.1993) (citing *International Shoe*, 326 U.S. 310 at 316, 66 S.Ct. 154). Applying these considerations here, I find it reasonable to assert jurisdiction over Citibank and Citigroup. The burden on the defendants to defend this lawsuit in the Virgin Islands is not severe, most of the relevant documents have already been filed in this Court and several airlines make daily flights connecting New York and St. Thomas. The Virgin Islands obviously has a valid interest in protecting its residents from out-of-state financial institutions. Resolving the case in this Court is just as efficient as trying it in New York and there is no evidence that the interests of New York or the Virgin Islands would be better served if this matter were not litigated in this jurisdiction. *See, e.g., Mesalic*, 897 F.2d at 701 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). Accordingly, I find that this Court has general jurisdiction over the defendants and that litigating this matter in this forum comports with the Constitution's due process requirements.

**B.  Venue in this Court is Proper under 28 U.S.C. § 1391(a)**

◼ Defendants also argue that this is an improper venue in which to litigate this dispute. (Mem. in Supp. of Defs.' Mot. to Dismiss at 20–21.) I agree with the plaintiffs, however, that the Virgin Islands is a proper choice of venue. (Pls.' Mem. of Law in Opp'n to Mot. to Dismiss at 24–29.) Although the plaintiffs agreed to submit to the jurisdiction of New York courts and to waive the defense of an inconvenient fo-

rum, they did not agree to sue or be sued exclusively in New York. The Amended 1999 Note states that

> the undersigned [Epstein] hereby irrevocably submits to the jurisdiction of any New York state or federal court sitting in New York City, and the undersigned hereby irrevocably agrees that any action may be heard and determined in such New York state court or in such federal court. The undersigned hereby irrevocably waives, to the fullest extent he may effectively do so, the defense of an inconvenient forum to the maintenance of any action in any jurisdiction.

(Mem. In Support of Defs.' Mot. To Dismiss, Ex. D at 10.) The Amended 1999 Note, however, does not limit "the undersigned" to a specific forum or bar the plaintiffs from suing the defendants in any forum having personal jurisdiction over the defendants. Moreover, under the federal venue statute, a diversity case such as this can be brought in a "district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(a). This statute further provides that "[f]or purposes of venue ..., a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. 1391(c). Because I have found that both Citibank and Citigroup are subject to this Court's personal jurisdiction and are thus deemed residents of the Territory for venue purposes, venue is proper in the Virgin Islands under section 1391(a)(1). In addition, these claims may be litigated in a "district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). The solicitation of the plaintiffs while they were in the Virgin Islands and the mailing of documents to the plaintiffs constitute a sufficiently substantial part of the events giving rise to this action to render venue

proper under section 1391(a)(2). Accordingly, I will deny the defendants' request to dismiss this matter for improper venue.

## C. This Case Need Not Be Transferred to New York

Anticipating that I might find that jurisdiction and venue are proper in this Court, the defendants have requested that I transfer this case to the United States District Court for the Southern District of New York. They aver that this claim actually arose in New York and that the clauses in the agreements stipulating to the application of New York Law and the plaintiffs' agreement to submit to the jurisdiction of New York courts require that this matter be litigated in New York. (Mem. Of Law in Support of Defs.' Mot. to Dismiss at 22–32.)

Transfer to a new forum under the federal venue statute requires that the transfer be "[f]or the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Citibank and Citigroup bear the burden of establishing by a preponderance of the evidence that transfer is necessary. *In re Charles Schwab & Co. Sec. Litig.*, 69 F.Supp.2d 734, 735 (D.Vi.1999) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). Although a trial judge is afforded great discretion in deciding this motion, he or she should not disturb a plaintiff's choice of forum unless the balance of factors strongly weighs in favor of transfer. *Jackson v. Executive Airlines, Inc.*, Civ. No.2000–121, 2001 WL 664673, *2, 2001 U.S. Dist. 8004 LEXIS at *7 (D.V.I. June 7, 2001). A defendant seeking a transfer will not overcome this presumption unless the defendant can prove that the "balance of convenience of the parties is *strongly* in favor of defendant." *Shutte.*, 431 F.2d at 25. Among the factors to be considered in making this determination are:

(1) plaintiff's choice of forum; (2) defendant's preference; (3) where the claim arose; (4) convenience to the parties; (5) convenience to witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) location of books and records; (7) practical considerations that could make the trial easier, more expeditious, or less expensive; (8) congestion of the possible fora; and (9) the familiarity of the trial judge with the applicable state law in diversity cases.

*See generally Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879–80 (3d Cir.1995).

■ Considering the totality of the circumstances surrounding this case, I make the following findings. First, Epstein and Financial Trust have selected this forum, and they are residents of the Virgin Islands with strong ties to this community. Epstein owns a seventy-acre island, and he and Financial Trust employ some twenty people. (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss, Epstein Decl. ¶¶ 2, 4–5.) It is important that local plaintiffs with grievances against defendants subject to this Court's jurisdiction be permitted to seek redress here in the Virgin Islands. As already noted, no forum selection clause binds the parties to bring suit in any particular jurisdiction. The defendants contacted the plaintiffs and entered into negotiations concerning the AIG investment while they were in the Virgin Islands, and at least one agreement was addressed to the plaintiffs through transmission to the plaintiffs' attorneys in New York, intending that it be sent to the Virgin Islands. I do not find that the defendants will suffer any great inconvenience by litigating this matter here. As the plaintiffs point out, most of the documents needed to try the case have already been filed in this Court, and the defendants are currently litigating other cases in this Court. Moreover, the defendants have not stated that their key witnesses are unable to travel to the Virgin Islands. *See Jumara,* 55 F.3d at 879. Finally, it is not at all clear that New York law must be applied to determine the causes of action raised by plaintiffs, but to the extent that another jurisdiction's jurisprudence does apply, this Court is fully capable of applying such law. For the foregoing reasons, I find that the requisite factors weigh in favor of litigating this matter in the Virgin Islands, and thus I will deny the motion to transfer.

**D. The Amended Complaint Adequately States Claims upon Which Relief May be Granted Under Federal Rule of Civil Procedure 12(b)(6)**

The defendants aver that I should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) because the amended complaint fails to state a claim upon which relief may be granted. In considering a Rule 12(b)(6) motion, I accept all allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *In re Rockefeller Ctr. Props., Inc.,* 311 F.3d 198, 215 (3d Cir.2002). "The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *Id.* (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The defendants raise several arguments in support of their motion, each of which I address in turn. (Mem. of Law in Support of Defs.' Motion to Dismiss at 36–52.)

1. *Virgin Islands Law Governs this Lawsuit*

■ Throughout their brief, the defendants rely on New York law to support

their 12(b)(6) motion. Their reliance on New York law, however, is misplaced. In the Amended 1999 Note, the parties stipulated only that

> [t]his note shall be governed by, and construed in accordance with, the laws of the State of New York, including matters of construction, validity and performance, without giving effect to principles of conflicts of law . . . .

(Mem. Of Law in Support of Defs.' Mot. To Dismiss, Ex. D at 10.) The issues raised by the plaintiffs, however, do not involve the "construction, validity and performance" of the note; rather, they involve allegations of fraud, misrepresentation, misinformation, and breach of a fiduciary duty of the defendants in advising the plaintiffs about the AIG-managed fund. Accordingly, I find that New York law does not govern these claims, and instead shall look to Virgin Islands law to determine whether the plaintiffs have stated claims cognizable in this jurisdiction.

### 2. *New York's Martin Act Does Not Apply to this Lawsuit*

The defendants aver that the Martin Act, New York General Business section 352 *et seq.*, bars the plaintiffs' claims for negligent misrepresentation (Count IV) and breach of fiduciary duty (Count V) because, under the Act, only New York State's Attorney General has the power to bring such claims resulting from the sale

or negotiation of any securities or commodities, and that there is no private right of action. (Defs.' Mem. Of Law in Support of Mot. To Dismiss at 44–46.) The plaintiffs counter that New York's Martin Act does not apply to nor bar their claims. (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss at 48–49.)

The plaintiffs correctly assert that New York law does not govern their claims. In Count IV of the amended complaint, the plaintiffs allege that the defendants failed to disclose that they or their affiliates had a pecuniary interest in the AIG Investment "despite mismanagement" of the AIG fund. The plaintiffs contend that they relied on the information and advice given by defendants, and suffered a substantial pecuniary loss as a result. (Am. Compl.¶¶ 56–57.) In Count V, the plaintiffs accuse the defendants of breaching a fiduciary duty owed to them. (*Id.* ¶¶ 59–61.) Neither of these claims involves the "construction, validity and performance" of the Amended 1999 Note, and therefore, they are not governed by New York law.[2]

### 3. *The Amended Complaint's Nondisclosure Allegations are Factual Issues to be Determined at Trial*

Citibank and Citigroup claim that *every* count in the amended complaint is premised upon their alleged failure to disclose a conflict of interest. They aver, however, that SSB's relationship with AIG was dis-

---

**2.** The Martin Act is New York's blue sky law. General Business Law section 352–c prohibits various fraudulent and deceitful practices in the distribution, exchange, sale and purchase of securities. The Martin Act vests exclusive authority in the New York Attorney General to investigate and prosecute violations of the Act. The Martin Act does not, however, provide for a private cause of action. *See Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, Civ. No.2002–1230, 2002 WL 31027550, *4, 2002 U.S. Dist. LEXIS 16995 at *10 (S.D.N.Y. Sept. 10, 2002) ("[I]t is well estab-

lished that there exists no private right of action for claims that are within the purview of the [Martin] Act.); *Granite Partners, L.P. v. Bear, Stearns, & Co., Inc.*, 17 F.Supp.2d 275, 291 (S.D.N.Y.1998) (same); *Deutsch v. Integrated Barter Int'l, Inc.* 700 F.Supp. 194 (S.D.N.Y.1988); *CPC Int'l, Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 276, 519 N.Y.S.2d 804, 514 N.E.2d 116 (N.Y.1987) (noting that "[a] majority of this court now holds that there is no cause of action impliedly created under [the Martin Act]").

closed to the plaintiffs both in the "pitch book" and in the Offering Circular used to market the AIG investment. Accordingly, therefore, the defendants assert that each count of the amended complaint should be dismissed to the extent that it is premised on the defendants' alleged failure to disclose the relationship between AIG and SSB. (Mem. Of Law in Support of Defs.' Mot. To Dismiss at 36–39.) The plaintiffs challenge the defendants' reliance on these documents and the propriety of considering them under Rule 12(b)(6). Alternatively, they claim that these documents *confirm* the defendants' failure to disclose the existence of a continuing investment banking relationship with AIG that would render the defendants unable to advise the plaintiffs in an impartial, objective manner. (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss at 32–36.)

■ Although generally, a district court may not consider matters extraneous to the pleadings, I may consider "a document *integral to or explicitly relied* upon in the complaint ... without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir.2002) (emphasis added) (quoting *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)). Because the parties dispute whether the document in question is the actual "pitch book" referenced in the amended complaint, however, I find that whether the defendants disclosed SSB's relationship to AIG to the plaintiffs is a disputed fact that precludes a Rule 12(b)(6) dismissal.

### 4. The Complaint Adequately Alleges that the Defendants' Wrongful Conduct Caused the Plaintiffs' Losses

■ Citibank and Citigroup argue that the plaintiffs have failed to allege adequately that the defendants' actions caused the plaintiffs' losses under New York law. (Mem. Of Law in Supp. of Defs' Mot. to Dismiss at 40–44.) As noted above, Virgin Islands law governs these claims. The plaintiffs maintain that they have adequately stated causation by alleging that the defendants did not disclose their relationship with AIG and did not promptly assist them in understanding how to remove AIG as fund manager—presumably because of a conflict of interest or loyalty owed to AIG. But for this delay, the plaintiffs complain that they could have obtained a new fund manager or reduced their losses in some other fashion. Accordingly, the amended complaint adequately alleges that the defendants' wrongful conduct caused their financial losses.

### 5. Plaintiffs' Claims of Breach of Fiduciary Duty and Negligent Misrepresentation Need Not Be Dismissed

Citibank and Citigroup argue that the claim of breach of fiduciary duty should be dismissed because the Subscription Agreement between AIG and the plaintiffs explicitly states that they did not owe the plaintiffs such a duty. Moreover, they assert that New York law does not recognize a fiduciary duty owed by a bank to its customer or by a broker to its customer. Finally, the defendants argue that the plaintiffs' negligent misrepresentation claim must also be dismissed because the defendants owed the plaintiffs no fiduciary duty. (Mem. Of Law in Supp. of Defs.' Mot. to Dismiss at 46–50.) The plaintiffs counter that, even under New York law, the issue whether a fiduciary duty exists requires a fact-specific analysis of the totality of the circumstances surrounding the relationship between the plaintiffs and the defendants. The plaintiffs contend, however, that under the controlling Virgin Is-

lands law, they have stated claims for breach of fiduciary duty and negligent misrepresentation. They argue that the defendants owed them a fiduciary duty because they "cultivated a relationship of trust over a fifteen-year span as their private banker" and then used this trust to market new and inherently risky investment opportunities which became even more risky because of defendants' tortious conduct. (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss at 41–46.)

### a. The Amended Complaint Adequately States a Claim for Breach of Fiduciary Duty

In Count V of the amended complaint, the plaintiffs allege that the defendants cultivated a relationship of trust with the plaintiffs over fifteen-years as their private banker, and that the defendants breached their fiduciary duty owed to the plaintiffs by failing to disclose a conflict of interest and effectively "forced" the plaintiffs to keep their funds in a failing investment. The plaintiffs claim that the defendants "served as [their] financial investment advisor and broker, as well as providing other financial and banking services to [p]laintiffs, and thereby formed a fiduciary relationship with [p]laintiffs and other investors." (Am.Compl.¶¶ 10, 59–60.)

In typical lender-borrower relationships, there is a presumption that the parties operate at arms-length and in their own interest. *Jo–Ann's Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*; 854 F.Supp. 387, 392 (D.Vi.1994). A fiduciary relationship may arise, however, depending upon the particular circumstances of the financial relationship. This may occur, for example, when a lender has substantial control over the borrower's business affairs. *Id.* Here, the plaintiffs have alleged that their relationship with Citibank and Citigroup was not the "garden-variety" at arms-length banking relationship. They claim that they and the defendants have a fifteen-year relationship and that the defendants acted as their financial advisor. I find that, for purposes of surviving a Rule 12(b)(6) motion, the amended complaint adequately states a claim for breach of fiduciary duty.

In addition, I find that the defendants' argument that the Subscription Agreement between AIG and the plaintiffs bars these claims against them is without merit. A fair reading of the Subscription Agreement compels the conclusion that its main purpose is to protect AIG's interests in its dealing with Epstein and FTC. The agreement discusses at length the process by which AIG, through its agent, Citibank, will deliver income notes to Epstein, the purchaser. The Subscription Agreement contains a clause stating that neither AIG, SSB, nor Citibank

> is acting as a fiduciary or financial or investment adviser for the Purchaser and the Purchaser is not relying on any written or oral advice, counsel or representations of the Company, the Investment Manager, the Placement Agent [SSB], the Agent or any of their respective affiliates ... [and that] [t]he Purchaser has consulted with its own legal, regulatory, tax, business investment financial, and accounting advisers to the extent it has deemed necessary, and has made its own investment decisions based upon its own judgments and upon any advice from such advisers as it has deemed necessary and not upon any view expressed by the Company, the Investment Manager, the Placement Agent, the Agent or any of their respective affiliates.

(Mem. In Supp. of Defs.' Mot. To Dismiss, Ex. C. at 10–11, ¶ i.) Although this document alludes to Citibank's role in this one transaction, the agreement does not speak

to the fifteen-year relationship between the defendants and the plaintiffs that is the gravamen of the amended complaint. Moreover, Citibank is not a party to nor did it sign the Subscription Agreement. I find, therefore, that the Subscription Agreement does not dispose of the plaintiffs' breach of fiduciary duty claim as a matter of law.

> b. The Amended Complaint Adequately States a Claim of Negligent Misrepresentation

■ In the Virgin Islands, the elements of negligent misrepresentation are: [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552 (1977). Count IV of the amended complaint alleges that the defendants negligently failed to disclose that they or their affiliates had a pecuniary interest in the AIG investment and that the plaintiffs relied upon the information and advice provided by the defendants to their detriment. (Am.Compl.¶¶ 55–56.) I find that Count IV thus adequately states a claim of negligent misrepresentation.

> 6. *The Rescission and Punitive Damages Counts are not Causes of Action*

The defendants contend that this Court should dismiss Counts VI and VII—for rescission of the note and for punitive damages—because each claim seeks specific relief without asserting any claim for relief. (Mem. Of Law in Supp. of Defs.'

Mot. to Dismiss at 51–52.) Whereas the plaintiffs, in their amended complaint, have set out their request for rescission of the Amended 1999 Note and punitive damages in the form of additional causes of action, I will require them to reframe them as part of the *ad damnum* clause.

> D. **Counts I, II, III, and VI of the Plaintiffs' Amended Complaint Fail to Meet Federal Rule of Civil Procedure 9(b)'s Heightened Pleading Standard for Claims of Fraud**

Finally, the defendants argue that Counts I, II, III, and VI should be dismissed due to the plaintiffs' failure to plead fraud with the requisite particularity as required under Federal Rule of Civil Procedure 9(b). They aver that the amended complaint is "rife with sweeping conclusory allegations but fatally short on detail" and that the fraud claims fail to explicitly reference Citigroup, do not state any dates on which the alleged conduct occurred, and do not name any specific employees of the defendants. The defendants contend that the complaint simply does not put them on notice of what exactly each is accused. (Mem. of Law in Supp. of Mot. to Dismiss at 32–35.) The plaintiffs counter that, although the amended complaint does not specify who within Citigroup or Citibank recommended the AIG investment, the defendants are aware of which of their employees are implicated in this matter. Moreover, the plaintiffs submit that the defendants are responsible for the "universal fungibility" of the Citigroup and Citibank names. The plaintiffs ask that this Court find that the amended complaint meets Rule 9(b)'s requirements, or, alternatively, permit them to replead their allegations of fraud under Federal Rule 15(a). (Pls.' Mem. Of Law in Opp'n to Mot. To Dismiss at 30–32, 39–41.)

Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to describe the circumstances constituting fraud "with particularity." Rule 9(b) requires that the plaintiff "give[ ] defendants notice of the claims against them, provide[ ] an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d at 215 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418). "Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it that it was false; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir.1992). Although the rule does not require a recitation of "every material detail" of the alleged fraud, it does require, at a minimum, "that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d at 217 (quoting *In re Burlington*, 114 F.3d at 1422).

In Count I, plaintiffs allege that the defendants' conduct "constituted the making of fraudulent misrepresentations … regarding the AIG Investment" that the defendants knew were materially misleading "because of their failure to state or disclose the additional or qualifying information regarding the investment banking relationship" of SSB with AIG. (*Id.* ¶ 46.) Count II vaguely states that the defendants' "statements and conducts … included the expression of opinions which [the defendants] did not, in fact, truthfully hold." (*Id.* ¶ 50.) Count III claims that the defendants are liable to the plaintiffs for their failure to disclose this information, "because they knew that their non-disclosure would justifiably induce the Plaintiffs to proceed with the proposed investment." (*Id.* ¶ 52.) Finally, Count VI again claims that the defendants' conduct "constituted the making of fraudulent misrepresentations to, and/or fraudulent concealment and non-disclosure of material facts." (*Id.* ¶ 63.)

■ I agree with the defendants' assertions that Counts I, II, III, and VI do not meet Rule 9(b)'s heightened pleading requirements. First, nowhere does the complaint state *who* made the alleged misrepresentations to the plaintiffs. *See In re Rockefeller Ctr. Props., Inc.*, 311 F.3d at 218 (finding that complaint failed to comply with Rule 9(b) because the allegation failed to identify the speaker, and "there is no indication that the speaker had the authority to speak on behalf of [the defendant] or that the employee was in regular contact with the [defendant]"). Second, the complaint fails to allege exactly *what* false statement or representation was made. Instead, it claims that the defendants' failure to inform them of SSB's relationship with AIG was fraudulent. This does not meet Rule 9(b)'s requirement that there be a false statement that the defendants *knew* was false. In addition, the plaintiffs' allegation that the defendants misrepresented their claims that they aspired to "the highest standards of moral and ethical conduct" is vague. Accordingly, I find that Counts I, II, III, and VI do not meet Rule 9(b)'s heightened pleading requirement, and, therefore, I will dismiss them. I shall, however, grant the plaintiffs thirty days within which to amend the

complaint to comport with Rule 9(b).[3] *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1434 (noting that ordinarily, when a complaint is dismissed under Rule 9(b) for failure to plead fraud with the requisite particularity, leave to amend the complaint is granted).

## III. CONCLUSION

For the foregoing reasons, I will deny Citibank's and Citigroup's motions to dismiss for lack of personal jurisdiction, to dismiss for improper venue, and to transfer this matter to the United States District Court for the Southern District of New York. I find that the amended complaint adequately states claims of breach of fiduciary duty and negligent misrepresentation, and therefore, will deny the defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. Finally, because I find that Counts I, II, III, and VI fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for claims of fraud, I will dismiss these claims and grant the plaintiffs leave to amend the complaint.

## ORDER

For the reasons given in the Memorandum Opinion of even date, it is **HEREBY ORDERED** that the defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2), motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and motion to transfer this matter are **DENIED.** Counts I, II, III, and VI fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for claims of fraud and are hereby **DISMISSED WITHOUT PREJUDICE.** The plaintiffs, however, shall have THIR-

TY DAYS within which to file an amended complaint with respect to these counts.

---

**3.** Citibank and Citigroup also argue that Count II, alleging fraud, is impermissibly based on the defendants' unspecified alleged false "expression of opinions." (Mem. Of Law in Supp. of Defs.' Mot. to Dismiss at 50–51.) Because I will dismiss this claim under Rule 9(b), I need not address this issue at this time.